## IN THE DISTRICT COURT OF CLEVELAND COUNTY
## STATE OF OKLAHOMA

| | |
|---|---|
| DON FOSTER AND BRENDA FOSTER, | |
| **Plaintiffs,** | |
| v. | Case No:  CJ-2023-1426 |
| STATE FARM FIRE AND CASUALTY COMPANY, DAVID CAMP, NOAH BASIC, RITA WALLENBERG INSURANCE AGENCY, INC., and CORBIN SWAIN, | |
| **Defendants.** | **JURY TRIAL DEMANDED** |

## SUMMONS

**TO THE ABOVE-NAMED DEFENDANT:**   **David Camp**
1901 Rock Oak Place
Blanchard, OK 73010

You have been sued by the above-named Plaintiff(s), and you are directed to file a written Answer to the attached Petition in the Court at the above address within twenty (20) days after service of this Summons upon you, exclusive of the day of service. Within the same time, a copy of your Answer must be delivered or mailed to the attorneys for the Plaintiff. Unless you answer the Petition within the time stated, judgment will be rendered against you with costs of the action.

If Interrogatories and Request for Production of Documents are served with this Petition, you are directed to answer the Interrogatories and produce the documents requested within thirty (30) days after service of these Interrogatories and Request for Production of Documents. The thirty (30) day response period shall not commence until an Answer to the Petition is filed.

Issued this __15__ day of _____February_____ , 2024.

MARILYN WILLIAMS, COURT CLERK

By: _____Amy Craig_____

[Seal]

ATTORNEYS FOR PLAINTIFF(S):

**YOU MAY SEEK THE ADVICE OF AN ATTORNEY ON ANY MATTER IN CONNECTION WITH THIS SUIT OR YOUR ANSWER. SUCH ATTORNEY SHOULD BE CONSULTED IMMEDIATELY SO THAT AN ANSWER MAY BE FILED WITHIN THE TIME LIMIT STATED IN THE SUMMONS.**

EXHIBIT 18

Adam Engel, OBA #32384
Ashley M. Thul, OBA #31245
MANSELL & ENGEL
204 North Robinson, 21st Floor
Oklahoma City, Oklahoma   73102
T: (405) 232-4100 ** F:  (405) 232-4140
Firm Email:    aengel@meclaw.net
               athul@meclaw.net


This Summons was served on _____
                              (*date of service*)

                                    _____
                                    (*signature of person serving summons*)


**YOU MAY SEEK THE ADVICE OF AN ATTORNEY ON ANY MATTER IN CONNECTION WITH THIS SUIT OR YOUR ANSWER.  SUCH ATTORNEY SHOULD BE CONSULTED IMMEDIATELY SO THAT AN ANSWER MAY BE FILED WITHIN THE TIME LIMIT STATED IN THE SUMMONS.**

# IN THE DISTRICT COURT OF CLEVELAND COUNTY
## STATE OF OKLAHOMA

DON FOSTER AND BRENDA FOSTER,

                          Plaintiffs,

v.

STATE FARM FIRE AND CASUALTY
COMPANY, DAVID CAMP, NOAH
BASIC, RITA WALLENBERG
INSURANCE AGENCY, INC., and
CORBIN SWAIN.

                          Defendants.

Case No:  CJ-2023-1426

STATE OF OKLAHOMA } s.s.
CLEVELAND COUNTY

**FILED**

FEB 15 2024

In the office of the
Court Clerk MARILYN WILLIAMS

**JURY TRIAL DEMANDED**

## AMENDED PETITION

**COMES NOW** Plaintiffs Don Foster and Brenda Foster (the "Foster Family") and for their causes of action against Defendants State Farm Fire and Casualty Company ("State Farm"), David Camp ("Camp"), Noah Basic, Rita Wallenberg Insurance Agency, Inc. ("Wallenberg"), and Corbin Swain, allege and state as follows:

    1.     At all times material hereto, the Foster Family was insured under State Farm Policy No. 36C077183 (the "Policy").

    2.     The Foster Family are residents of Oklahoma City, Cleveland County, Oklahoma, and are citizens of the State of Oklahoma.

    3.     During the policy period, Plaintiffs' home in Oklahoma City, Cleveland County, Oklahoma (the "Insured Property"), sustained covered damage due to a significant hail and wind storm. State Farm assigned the claim the date of loss of July 18, 2021 (Claim No. 36-23N9-29N).

    4.     The policy was in full force and effect at the time of loss.

    5.     The resulting damage is a covered cause of loss that occurred while Plaintiffs were insured by State Farm.

6.     The Foster Family timely submitted a claim for this loss to State Farm, made the premises available for inspection by State Farm's adjusters and engineers, cooperated in the limited investigation that State Farm performed, and otherwise complied with all conditions precedent to recovery under the subject insurance policy.

7.     Defendant State Farm Fire and Casualty Company ("State Farm") is a foreign corporation incorporated in Illinois and maintains its principal place of business in a state other than Oklahoma.  State Farm is authorized to transact business within the State of Oklahoma and may be served with process through its designated service agent, identified as Oklahoma Insurance Commissioner, Glen Mulready, 400 N.E. 50th Street, Oklahoma City, Oklahoma 73105.

8.     Defendant Camp is an adjuster living in Oklahoma.  He is licensed to conduct his business in the State of Oklahoma by the Oklahoma Insurance Department (License No. 127578).

9.     Defendant Camp is an adjuster for Defendant State Farm and was assigned to adjust the Foster Family's claim.  During the adjustment of the claim, Defendant Camp worked both inside and outside his scope of adjusting the Foster Family's insurance claim.

10.     Defendant Noah Basic is a ladder assist.

11.     Defendant Noah Basic is a resident of Oklahoma.

12.     Defendant Noah Basic was present at the Foster Family's home on or about August 23, 2021.

13.     Defendant Wallenberg is the soliciting agent for Plaintiffs' insurance policy which was issued by Defendant State Farm.

14.     Defendant Wallenberg was a domestic corporation with its principal place of business in Cleveland County, Oklahoma. Upon information and belief, Defendant Wallenberg has since been dissolved.

2

15.     Rita Wallenburg was the principal shareholder and owner of the Wallenburg Insurance Agency and is personally liable for all claims against her dissolved corporation pursuant to 18 O.S. 1100.3. Ms. Wallenburg is a resident of Oklahoma.

16.     Corbin Swain ("Swain") is a Licensed Professional Engineer (P.E.) in the State of Oklahoma. (License No. 25839).

17.     Swain is a resident of the State of Oklahoma.

18.     Based on the foregoing, this Court has jurisdiction over these parties and this subject matter and venue is proper herein.

19.     Defendant State Farm continued to adjust the Foster Family's claim through the statute of limitations. This included State Farm's continued consideration of the Foster Family's claim, much of which State Farm refused to provide the Foster Family with a response or decision on the same. Specifically, the Foster Family timely reported a claim to State Farm for a covered cause of loss arising from a significant hail and wind storm which caused substantial damage to the Foster Family's roof and causing interior water damage to the Foster Family's home. State Farm assigned the claim the date of loss of July 18, 2021. State Farm's in-house adjuster performed an improper and inadequate investigation that confirmed the Foster Family's property sustained covered damage from this storm, but did not find damage to any roof shingles or the interior of the Foster Family's home. Then, after being advised by the Foster Family that State Farm's adjuster performed an inadequate and improper investigation, State Farm retained notorious insurance engineer Corbin Swain of Envista Forensics to inspect the Foster Family's property. Not surprisingly, Mr. Swain inspected the Foster Family's property on June 30, 2022 and issued a report on July 29, 2022 finding no wind or hail damage to the roof shingles or valley metals. Mr. Swain's report was issued well after the expiration of the limitation provision

3

contained in the policy. State Farm then sent a low-ball offer to the Foster Family on August 4, 2022. State Farm sent correspondence and verbally communicated it was continuing to consider the Foster Family's claim by assigning an engineer to inspect the Foster Family's property and advising that it was considering the engineering reports through the statute of limitations. State Farm failed to provide a denial on the claim including any denial of liability within time to enable the Foster Family to initiate this action within the limitation provision contained in the policy. The Foster Family relied upon Defendant State Farm's continued adjustment and reassurances that Defendant State Farm was investigating the insurance claim through the statute of limitations. Accordingly, Defendant State Farm has waived its right to assert a statute of limitations defense and/or is estopped from asserting such a defense.

20.     Defendant State Farm's conduct outlined above in Paragraph 19 prohibited the Foster Family from filing suit within the policy's limitation provision because Defendant State Farm failed to ultimately deny the claim, continued to negotiate the claim, and did not complete its handling of the claim until after the expiration of the policy's limitation provision. This delay was the result of Defendant State Farm's claims handling actions.

## COUNT I

The Foster Family fully incorporates each and every allegation in the preceding paragraphs of this Petition as if each were fully iterated verbatim herein, and for its additional claims against only Defendant State Farm, alleges and states:

21.     State Farm breached the contract and the implied covenant of good faith and fair dealing in the insurance contract, as a matter of standard business practice, in the following respects, all in violation of the implied covenant of good faith and fair dealing and resulting in financial benefit to the Defendant State Farm.

4

22.    State Farm had a duty to promptly provide these claimed insurance benefits.  The insurance company's duty arises from the recognition that a substantial part of the right purchased by an insured is to receive the policy benefits promptly.  *Goodwin v. Old Republic Ins. Co.*, 1992 OK 34, ¶8, 828 P.2d 431; *Christian v. American Home Assur. Co.*, 1977 OK 141, 577 P.2d 899.

23.    Oklahoma's Supreme Court has stated that the entire course of conduct must be considered in evaluating the reasonableness of the insurer's conduct in handling the claim. *Timmons v. Royal Globe Ins. Co.*, 1985 OK 76, 713 P.2d 589. The Defendant's conduct described in this Count herein was improper and in bad faith.

24.    Plaintiffs could further elaborate on the allegations in this section, but State Farm refuses to produce documentation including the claim file to the Plaintiffs.

25.    State Farm, as an act of improper claims handling, is concealing documentation from the Plaintiffs that allows them to further pled all the improper acts by this Defendant. Plaintiffs has pled State Farm breached its duty of good faith, but to the full extent, only State Farm knows because the Defendant continues to conceal information from its policyholder.

26.    State Farm breached the subject insurance contract by wrongfully denying coverage and failing and refusing to pay the proper amounts due under the policy for the covered damage to Plaintiffs' home.

27.    State Farm failed and refused payment and other policy benefits on behalf of Plaintiffs at a time when Defendant knew that Plaintiffs were entitled to those benefits. Further, Defendant Camp and his expert knew its evaluation was improper during the claim.

28.    State Farm failed to properly investigate Plaintiffs' claims and to obtain additional information.

29.    State Farm withheld payment of the benefits on behalf of Plaintiffs knowing that Plaintiffs' claims for those benefits were valid.

30.    State Farm refuses to honor Plaintiffs' claims in some instances for reasons contrary to the express provisions of the policy and/or Oklahoma law.

31.    State Farm refused to honor Plaintiffs' claims in some instances by applying restrictions not contained in the policy.

32.    State Farm refused to honor Plaintiffs' claims in some instances by knowingly misconstruing and misapplying provisions of the policy.

33.    State Farm failed to adopt and implement reasonable standards for the prompt investigation and reasonable handling of claims arising under these policies, to include Plaintiffs' claims.

34.    State Farm did not attempt in good faith to effectuate a prompt, fair and equitable settlement of Plaintiffs' claims once liability had become reasonably clear.

35.    State Farm forced Plaintiffs, pursuant to its standard claims practice, to retain counsel in order to secure benefits State Farm knew were payable.

36.    State Farm failed to properly evaluate any investigation that was performed.

37.    State Farm refused to consider the reasonable expectations of the insured.

38.    State Farm refused to consider evidence of Plaintiffs' home's pre-loss condition in determining scope of repair and denying this claim.

39.    State Farm hired biased experts to aid in underpayment of claims (as a matter of routine business practice – see below).

40.    State Farm refused to pay for appropriate repairs for damage it admits are owed.

41.    State Farm misrepresented Plaintiffs' policy language.

42.    State Farm refused to consider Oklahoma code, manufacturer specifications, and industry standards when determining the necessary and proper repairs to restore Plaintiffs' home to its pre-loss condition.

43.    State Farm refused to pay for the repairs to the insured property that Defendant knows is incapable of being repaired due to Oklahoma building codes, manufacturer, specifications, and industry standards.

44.    State Farm's final offer of settlement was over sixty (60) days after the claim was initially made by the Foster Family.

45.    State Farm refused to properly evaluate meteorological data.

46.    State Farm refused to consider damage in the vicinity of Plaintiffs' home.

47.    The Foster Family's home was damaged during the policy period by a catastrophic wind and hail event. The Foster Family submitted their claim to State Farm which retained Envista Forensics to evaluate damage. State Farm, through Envista Forensics, determined the Foster Family's roof was not damaged by hail and the interior damage to the Foster Family's home was not caused by the storm.

48.    State Farm's final offer of settlement for the Foster Family's claim is unreasonably low because it fails to consider necessary repairs.

49.    State Farm must perform a reasonably prompt investigation of an insurance claim.

50.    There was unreasonable delay with the adjustment of the Foster Family's claim, because it took over one year from the date of loss.

51.    State Farm forced the Foster Family, pursuant to its standard claims practice, to retain counsel in order to secure benefits State Farm knew were payable.

52.    State Farm trains its adjuster must perform a proper investigation and evaluation of the claim.[1]

53.    State Farm adjusters are expected to thoroughly investigate each insurance claim.

54.    State Farm trains its adjusters that it is State Farm's responsibility to investigate an insurance claim; not the homeowners.

55.    State Farm trains its adjusters it would not be proper claims handling to ignore evidence that supports coverage.

56.    In this claim, State Farm adjusters failed to thoroughly investigate the claim because it failed to provide information to its consultants relevant to the evaluation of the claim. Further, State Farm ignored evidence that supported paying the claim.

57.    State Farm trains its adjusters to not make a claim decision (evaluation) until it has all the information necessary to make a determination of coverage.

58.    State Farm trains its adjuster that in order to write a proper evaluation, it must write a proper estimate to repair covered damage.

59.    State Farm trains its adjusters that part of writing an accurate estimate is determining the proper repairs that need to be made to the roof.

60.    State Farm trains its adjusters to diligently investigate to determine if a claim is valid.

61.    In this case, State Farm did not diligently investigate facts to determine if the claim is valid.

62.    State Farm did not send a denial letter during the claim.

63.    State Farm did not assert exclusions during the claim.

---

[1] The following paragraphs alleging State Farm training is based on testimony of State Farm adjusters in prior cases.

64.    State Farm did not consult with counsel during the claim.

65.    As a direct result of the above-described wrongful acts and omissions by State Farm, the Foster Family suffered loss of the coverage by State Farm, mental and emotional distress, and embarrassment.

66.    Plaintiffs seek reformation of the policy to express the actual and real agreement of the parties as outlined below.

### State Farms Has a Routine Business Practice of Unreasonably Lowballing Insurance Claims:[2]

67.    The Foster Family was treated as a matter of routine business practice of improper claims handling as described in this section.  As a routine claims handling practice, State Farm treated Plaintiffs similar to other claims and cases as described in this section.

68.    State Farm's conduct in the denial of the Foster Family's insurance claim demonstrates a consistent, willful, pervasive, and abusive scheme to deny Oklahomans insurance benefits associated with wind and hail storms, in the following respects:

   a.    As a matter of routine practice State Farm admits nominal covered damage, e.g., the soft metals and inexpensive roofing accessories, were damaged by the covered hailstorm.

   b.    State Farm admits homeowners' roofs have "damage" all over the roof.  State Farm routinely admits covered hail damage to property in the vicinity, such as mailboxes, cars, and outbuildings, while attributing shingle damage to non-covered defects, wear and tear, or other excluded damage.

   c.    State Farm pays for few, if any, damaged shingles on the homeowners' roof despite demonstrably large hail and observable hail damage.

---

[2]  "[E]vidence regarding how Enterprise treated other claimants [was] relevant to that exercise. Such evidence is expressly allowed under [the federal counterpart of 12 O.S. § 2406] Fed. R. Evid. 406. The only impact such evidence might have had on the jury was to convince them that Enterprise habitually denied claim in bad faith, precisely the point Vining wished to prove. Allowing such evidence…[was not] an abuse of discretion." *Vining*, F. 3d 1206, 1209 (10th Cir. 1998). Since the decision in *Vining*, "there has been no room for doubt that the plaintiff in a bad faith case… is entitled to support his bad faith claim, at least in part, by proving a deliberate, willful pattern of abusive conduct by [the insurer] in handling claims under its…insurance policies." *Markham v. Nat'l States Ins. CO.*, No. CIV-02-1606-F, 2004 WL 3019308, at *2

    d. State Farm improperly evaluates claims by estimating low benefit payments within a standard deviation above or below the deductible.

69.    On information and belief State Farm has implemented new claims management and/or claims handling directives resulting in the systematic denial and/or underpayment of covered claims across the State of Oklahoma.

70.    State Farm has implemented this claims handling practice across the state of Oklahoma, and Plaintiff's counsel is aware of numerous cases that fit the same pattern and practice.

71.    The new claim management and/or claim handling directive has resulted in numerous complaints by State Farm agents, adjusters, and insureds, made intentionally and to regulatory agencies, e.g., the Oklahoma Insurance Department.

72.    The new claims management and/or claims handling directive has forced an increased number of insureds to file suit in order to recover owed and payable benefits.

73.    The new claims management and/or claims handling directive has resulted in increased profitability for State Farm due to decreased claim benefits paid to insureds.

74.    The new claims management and/or claims handling directive has resulted in a significant decrease in claims paid.

75.    Insurance industry professionals across the State of Oklahoma have observed the new claims management and/or claims handling directive as well as the resulting increase in claim denials and underpayment of covered claims.

76.    State Farm is aware of the new claims management and/or claims handling directive and supports the effort to effect a pattern and practice of wrongful claim denials and/or unreasonable "low-ball" settlement offers.

77.     Evidence of State Farm's pattern and practice of denying wind and hail claims was the crux of recent jury trials in Oklahoma City – both of which resulted in verdicts in favor of the Plaintiff.

78.     *Bates v. State Farm* - On November, 7 2022, during a 5 day jury trial and only 6 hours of deliberation, a jury rendered a verdict stating State Farm acted in bad faith, awarding $15,800 under the breach of contract claim and $325,000 for bad faith. This involved a wind and hail storm.

79.     During *Bates*, the jury heard evidence of a significant hailstorm damaging the plaintiff's roof. A former State Farm adjuster discussed the new pattern and practice known as the "Hail Focus" initiative by State Farm (described in this proposition). Ultimately, the initiative strips the decision making from the adjusters that actually inspect the buildings and requires managers to pay for covered damage.

80.     *Rowan v. State Farm* - An Oklahoma County jury awarded plaintiff $70,400 for breach of contract and $680,000 for bad faith conduct. This was a wind and hail loss.

81.     In *Rowan*, like this case, Defendant hired a biased or outcome oriented engineer to support its conclusions.

82.     In *Rowan*, the insurance company removed the case to federal court. The case was remanded and Defendant State Farm was sanctioned for its improper removal.

83.     Since making these changes to the claims handling department, State Farm has increased profitability. This is reflected in its loss ratios.

84.     State Farms loss rations in 2020 demonstrate the company was more profitable by paying less of a percentage in claims.

85. State Farms loss rations in 2021 demonstrate the company was more profitable by paying less of a percentage in claims.

86. State Farms loss rations in 2022 demonstrate the company was more profitable by paying less of a percentage in claims.

87. The increased aggression in which State Farm adjusts insurance claims nationwide has led to drastic increase in litigation against the company:

88. In 2015, State Farm had 250 cases filed against it in federal court

89. In 2016, State Farm had 254 cases filed against it in federal court.

90. In 2017, State Farm had 256 cases filed against it in federal court.

91. In 2018, State Farm had 273 cases filed against it in federal court.

92. In 2019, State Farm had 366 cases filed against it in federal court.

93. In 2020, State Farm had 366 cases filed against it in federal court.

94. In 2021, State Farm had 1,384 cases filed against it in federal court.

95. In 2022, State Farm had over 2,331 cases filed against it in federal court.

96. To fulfill State Farm's litigation defense needs, State Farm currently employs at least four (4) different law firms in Oklahoma – Gable Gotwals; Crowe and Dunlevy; McAfee and Taft; Atkinson, Brittingham, Gladd.

97. In the past 5 years, State Farm has hired other law firms to defend first party claims in Oklahoma.

98. State Farm has spent millions of dollars defending alleged wrongful denials in lawsuits filed in Oklahoma for wind and hail claims in the past 5 years.

99.     In this claim, Defendant treated the Foster Family in a similar manner as the other cases and claims above pursuant to State Farms routine claims handling practice of underpaying claims.

### State Farms Has a Routine Business Practice of Hiring Biased Experts to Keep Claim Payments Unreasonably Low.

100.     State Farm's only retained expert during the claim is Corbin Swain.

101.     State Farm did not rely on any other experts as a basis for its claim determination other than Corbin Swain.

102.     Corbain Swain is not an adjuster; he is a professional engineer.

103.     Corbin Swain did not adjust the Foster Family's insurance claim. He only rendered professional engineering services.

104.     Corbin Swain is not a qualified or licensed contractor or roofer in the State of Oklahoma. He has not installed a roofing system – nor has he worked for a contractor to oversee the installation of a single-family residential roofing system.

105.     Plaintiffs allege it was unreasonable for State Farm to rely on the opinions of Corbin Swain, because he is not qualified to render reasonable evaluations – due to his lack of expertise in the roofing industry.

106.     State Farm must hire unbiased experts to aid in the evaluation of insurance claims.

107.     State Farm trains its adjusters to hire unbiased experts.

108.     Corbin Swain is routinely hired by insurance companies to aid in the underpayment or denial of insurance claims.

109.     The vast majority of Corbin Swain's client's are insurance companies – at least 97%.

110.    Corbin Swain has performed at least 480 inspections for insurance companies and 95% of his income comes from insurance companies.

111.    On average, Mr. Swain makes $2,500 per report, which would calculate to $1,200,000 from for these insurance reports.

112.    State Farm expects its experts to not render opinions until it has sufficient information to make a proper determination.

113.    If State Farm experts render opinions without all the information available on a claim, it can lead to improper evaluation and unreasonably low payments.

114.    In this case, Defendant State Farm's expert rendered his opinion prior to having all the correct information which led to an unreasonably low evaluation of the claim.

115.    State Farm expects its experts not to ignore information that leads to coverage and/or additional money being paid to its homeowners.

116.    In this case, State Farm's expert rendered opinions that ignored the information provided to him because it supported coverage and paying additional benefits.

117.    State Farm has a history of hiring experts for the purpose of aiding underpaying insurance claims.

118.    In the *Rowan* case, the verdict reflects evidence that State Farm hired biased engineers, like Corbin Swain in this case, to underpay insurance benefits.

119.    Defendant Camp has a history of using biased outcome-oriented experts to underpay or deny insurance claims.

120.    In *Switzer v. State Farm*, currently pending in Cleveland County, Defendant Camp also hired an engineer to ignore material facts and write expert reports that underpaid the family in that case.

121.    In *Jackson v. State Farm*, currently pending in Cleveland County, Defendant Camp also hired an engineer to ignore material facts and write expert reports that underpaid the family in that case.

122.    State Farm's acts and omissions were made with reckless disregard for the Foster Family's rights and/or were done intentionally and with malice and, therefore, the Foster Family is entitled to recover punitive damages.

## COUNT II

Plaintiffs fully incorporate each and every allegation in the preceding paragraphs of this Petition as if each were fully iterated verbatim herein and, for their additional claims against Defendant Camp, allege and state:

123.    State Farm hired Defendant Camp to act as an adjuster and estimator for this claim. During the adjustment of the claim, Defendant Camp worked outside his scope of adjusting the Foster Family's claim.

124.    Adjusters making false representations to insureds is an intentional tort and outside the scope of the adjustment of an insurance company's adjuster scope of work.

125.    Defendant Camp has a history of making false and material representations to insureds. In *Jackson v. State Farm*, currently pending in the District Court of Cleveland County, Defendant Camp also made false and material representations to the insured knowing the statute of limitations would soon expire.

126.    The factual detail and particular who, what, when, and where associated with this cause of action is set forth in this paragraph with as much specificity as is currently known to the Foster Family. Defendant Camp is an adjuster for Defendant State Farm and was assigned to adjust the Foster Family's claim.  During the adjustment of the claim, Defendant Camp worked outside

the scope of his adjusting the Foster Family's insurance claim. Defendant Foster made false representations to the Foster Family during the adjustment of the claim. Specifically, Mr. Camp told Mr. Foster that an engineer would reinspect the Foster Family's property in May 2022. This statement was later discovered to be false – the truth is the engineer would not reinspect the Foster Family's property until June 30, 2022 and would not prepare a report until July 29, 2022. Furthermore, Defendant Camp was aware of the upcoming statute of limitations at the time he made these misrepresentations to Mr. Foster. While he made the false representations, Defendant Camp was aware the statute of limitations would soon expire and the Foster Family would not have legal recourse against Defendant State Farm. The Foster Family relied on Defendant Camp's false representations and waited for Defendant State Farm's engineer's inspection and report. The Foster Family relied on Defendant Camp's false representation for weeks and, consequently, suffered substantial damages including their unrepaired home to suffer additional damage and being forced to file this lawsuit. Effectively, Defendant Camp's false representations prevented the Foster Family from having their insurance claim properly and timely adjusted without the need for the retention of lawyers and litigation. The Foster Family will immediately supplement any factual details with specificity that they can identify that are not set forth above.

127. While making these false representations, Defendant Camp was acting outside the scope of adjusting the insurance claim.

128. The described representations by Defendant Camp were material and false and made at a time when Defendant Camp knew they were false, or made as a positive assertion recklessly, without any knowledge of the truth.

129.    The described representations were made with the intention that the Foster Family should rely upon them during the adjustment of their insurance claim and the Foster Family did rely upon them to their detriment.

130.    The described representations were words or conduct which created an untrue or misleading impression of the actual past or present facts in the mind of the Foster Family.

131.    The described false representations, concealment and deceit induced the Foster Family to rely upon these representations, and the Foster Family, acting in reliance thereon, suffered loss.

132.    As a direct result of the described false representations, concealment, and deceit, the Foster Family suffered loss of the policy coverage promised to them, emotional distress, frustration and duress and other consequential damages.

133.    Defendant Camps' acts and omissions were with reckless disregard for the rights of others, and/or were done intentionally and with malice, and therefore the Foster Family is entitled to recover punitive damages.

## COUNT III

The Foster Family fully incorporates each and every allegation in the preceding paragraphs of this Petition as if each were fully iterated verbatim herein, and for their additional claims against Defendant Noah Basic[3] allege and state:

134.    Defendant Noah Basic is a ladder assist employed with SeekNow.

135.    To the best of Plaintiffs' current information and belief, Defendant Noah Basic was present at the Foster Family's home on or about August 23, 2021.

---

[3] Defendant Noah Basic were not investigating the claim on behalf of Defendant State Farm. Rather, he is a ladder assist that is present to aid in the safe assessment of the Foster Family's roofs. Thus, this Defendant is a stranger to the Foster Family's claim and, therefore, should never have been on the Foster Family's roof at all.

136.    Defendant Noah Basic walked on the Foster Family's roof on or about August 23, 2021.  Defendant Noah Basic intentionally walked all over the Foster Family's roof causing damage to the roof.  Further, Defendant Noah Basic was personally aware of the additional damage he intentionally caused to the Foster Family's roofs by his foot traffic to the Foster Family's roofs but intentionally disregarded the same and continued to walk on the roofs causing even more damage. The damage intentionally caused by Defendant Noah Basic is considered "footfall" and excluded under the Foster Family's insurance policy. Defendant Noah Basic is aware that the intentional damage he caused to the Foster Family's roof would not be covered under the subject State Farm insurance policy.[4]

137.    While walking on the Foster Family's roofs, Defendant Noah Basic knew he was damaging the Foster Family's roofs.  Although he was aware he was damaging the Foster Family's roofs, he did not stop walking on the roof. Rather, Defendant Noah Basic intentionally continued to walk on the roofs. During this time, Defendant Noah Basic caused additional damage to the home's roofs.

138.    Defendant Noah Basic intentionally damaged the Foster Family's roofs.  Defendant Noah Basic's intentional destruction of the Foster Family's property is an intentional tort and, per Oklahoma law, is not within the scope of his employment.

139.    Defendant Noah Basic's intentional and willful conduct outside the course and scope of his employment subjects him to personal liability under Oklahoma law.

140.    As a result of Defendant Noah Basics intentional actions, the Foster Family's home suffered damage resulting in financial loss to the Foster Family.

---

[4] This intentionally caused damage is not covered under the Foster Family's State Farm insurance policy and cannot be recovered under a breach of contract claim.

## **COUNT IV**

In the alternative to Count III the Foster Family brings Count IV, and fully incorporates each and every allegation in the preceding paragraphs of this Petition as if each were fully iterated verbatim herein, and for their additional claims against Defendant Noah Basic alleges and states:

141.    Defendant Noah Basic owed a duty to the Foster Family when walking on the Foster Family's roof outside of his scope of work for the insurance company.

142.    Defendant Noah Basic created damage outside his scope of work for Defendant State Farm.

143.    Defendant Noah Basic owed the Foster Family a duty to act with reasonable care, skill, and diligence, while walking on the Foster Family's roofs.

144.    Defendant Noah Basic knew his work included walking on the Foster Family's roof that could damage the property.

145.    Defendant Noah Basic was negligent and breached his duty owed to the Foster Family by negligently walking on their home's roofs.

146.    The Foster Family was damaged as a direct and proximate result of Defendant Noah Basic's negligence.

147.    As a result of Defendant Noah Basic's negligence, the Foster Family suffered economic and non-economic damages including repair expense, mental and emotional distress, and other consequential damages.

148.    The conduct of Defendant Noah Basic was intentional, willful, malicious, and in reckless disregard of the Foster Family's rights, and is sufficiently egregious in nature as to warrant the imposition of punitive damages.

## <u>COUNT V</u>

Plaintiffs fully incorporates each and every allegation in the preceding paragraphs of this Petition as if each were fully iterated verbatim herein, and for its additional claims against Defendant State Farm and Defendant Wallenberg, alleges and states:

149.    Defendant Wallenberg was at all times material hereto an authorized soliciting agent for the involved insurance policy.

150.    The soliciting agent Defendant Wallenberg acted on behalf of Defendant State Farm.

151.    The factual detail and particular who, what, when, and where associated with this cause of action is stated in paragraphs 151 through 154 with as much specificity as is currently known to Plaintiffs. Plaintiffs bought their insurance policy directly from Defendant State Farm's soliciting agent Defendant Wallenberg. Defendant Wallenberg represented to Plaintiffs she had authority from Defendant State Farm to act on its behalf. Specifically, Don Foster worked with Defendant Wallenberg to ensure the proper insurance coverage and policy was secured for Plaintiffs' home. At no point in time did Defendant Wallenberg notify Plaintiffs or make them aware that the coverage differed from their original conversations. Mr. Foster specifically sought sufficient replacement cost coverage for their home so that, in the event of a storm loss, repairs could be made to fully restore his home to its pre-loss condition. Defendant Wallenberg assured Mr. Foster she could obtain the requested coverage, representing herself and her agency as having familiarity and expertise with the type of coverage sought by Mr. Foster. Defendant Wallenberg then represented that she did, in fact, procure coverage that would fully restore Plaintiffs' home to its pre-loss condition in the event of storm damage (regardless of the severity). However, these representations by Defendant Wallenberg were false.

152.    Defendant Wallenberg represented that she performed an inspection of Plaintiffs' home. Defendant Wallenberg never advised the Foster Family of any prior damage found during its inspection or any concern that their home had pre-existing damage.  Specifically, Defendant Wallenberg never advised the Foster Family of any long-term age-related deterioration or mechanical damage to the home's roof found during her inspection. Rather, Defendant Wallenberg represented to Plaintiffs that the Insured Property was in good condition, satisfied State Farm's underwriting guidelines and requirements, and qualified for full replacement coverage. Defendant Wallenberg represented to the Foster Family that she performed a thorough inspection of the Property and no pre-existing damage or concerns were found.  Defendant State Farm approved the inspection of its agent Defendant Wallenberg and issued the policy. Had Defendant Wallenberg identified or indicated that pre-existing damage or other concerns existed on the property, the Foster Family would have taken corrective action. At no time, did Defendant State Farm or Defendant Wallenberg advise Plaintiffs' that their home had pre-existing damage, did not meet Defendant State Farm's underwriting guidelines or requirements, or did not qualify for the full replacement coverage Plaintiffs requested. Rather, Defendant Wallenberg assured the Foster Family that, after performing its inspection and calculations, their property satisfied all conditions and qualified for full replacement cost coverage, and sold them and renewed a policy accordingly. The Foster Family relied on these representations by Defendant Wallenberg when purchasing and renewing the State Farm policy.  However, these above representations made by Defendant Wallenberg were false.

153.    In addition, Defendant Wallenberg informed the Foster Family that her agency would perform calculations to determine the proper amount of coverage to protect the home in the event of a loss. Insurance agencies frequently use sophisticated software to calculate limits of

coverage. Defendant Wallenberg assured Plaintiffs that she and her agency were experts and highly proficient in using the valuation software. Mr. Foster agreed to allow Defendant Wallenberg to perform the inspections and use the sophisticated software to perform the calculations to determine sufficient limits of coverage. Mr. Foster provided all requested information to Defendant Wallenberg but otherwise had no input regarding the amount of coverage Defendant Wallenberg calculated and selected. Defendant Wallenberg calculated the Policy's replacement costs limits—which directly affect Plaintiffs' premiums—as if Plaintiffs' home was in perfect condition, without pre-existing damage. Defendant Wallenberg represented that after performing her inspections and calculations, Plaintiffs' home was sufficiently insured to value, and sold and renewed the Foster Family a policy accordingly. However, these above representations made by Defendant Wallenberg were false.

154.    Plaintiffs, relying on Defendant Wallenberg's representations, timely paid their premiums and their Policy remained in full force and effect. On or about August 19, 2021, Plaintiffs made a claim for a wind and hail storm. Plaintiffs contacted Defendant State Farm and made a claim under the State Farm policy for damage that occurred to their property as a result of the storm. Plaintiffs were assured by Defendant Wallenberg's representations that their home had been insured to value, and that the adequate and proper insurance providing comprehensive replacement coverage as requested, without issues of pre-existing damages, had been obtained by Defendant Wallenberg, and that the Insured Property did not have pre-existing damage or insufficient coverage that would limit claim payments. Plaintiffs relied on these reassurances from the onset of the claim, but Defendant State Farm wrongfully denied the claim on the basis of pre-existing conditions including long-term age-related deterioration. This was contrary to the representations made by Defendant Wallenberg during the issuance and renewal of Plaintiffs'

22

policy. These representations by Defendant Wallenberg were false, and made with the intent to deceive Plaintiffs, or made with reckless disregard of whether the statements were true or false. Plaintiffs will immediately supplement any factual details with specificity that they can identify that are not set forth above.

155.    The described representations by Defendant State Farm's soliciting agent were material and false and made at a time when Defendants knew they were false and made with the intent to deceive, or recklessly made with disregard for the truth.

156.    The described representations were made with the intention that Plaintiffs should act upon them in purchasing insurance and Plaintiffs did rely upon them to its detriment.

157.    Plaintiffs justifiably relied on these representations, purchased the subject insurance policy, and paid premiums.

158.    The described representations were words or conduct which created an untrue or misleading impression of the actual past or present facts in the mind of Plaintiffs.

159.    The described omissions and non-disclosure involved concealing and failing to disclose facts which Defendants had a duty to disclose. Such facts were material and were concealed or failed to be disclosed with the intent of creating a false impression of the actual facts in the mind of Plaintiffs.

160.    The described false representations, concealment, and deceit induced Plaintiffs to purchase this policy, and Plaintiffs, acting in reliance thereon, suffered loss.

161.    On August 4, 2022, for malicious, oppressive and fraudulent reasons, Defendant State Farm denied Plaintiffs' claim, asserting that the damage was the result of pre-existing issues with Insured Property including long-term age-related deterioration and mechanical damage.

162.    Plaintiffs seeks reformation of the policy to express the actual and real agreement of the parties as outlined above.

163.    In engaging in a wrongful course of conduct and in committing the wrongful acts and practices alleged herein, Defendants, and each of them, acted in concert and in civil conspiracy with each other and together, and each conspired with and aided and abetted the others to further their own economic interests at the expense of the economic interests, peace of mind, and well-being of Plaintiffs.

164.    In engaging in the above-described wrongful course of conduct, Defendants, and each of them, were aware that they were committing tortious acts against Plaintiffs and intended to achieve their objective of providing a false basis for the denial of Plaintiffs' claim for benefits, or acted with reckless disregard of whether their above representations were true or false.

165.    The acts alleged were part of Defendants' and each of their inclusive, ordinary business practice designed to keep Defendants from paying policy benefits legitimately owed to Plaintiff, in order to increase Defendants' profits.

166.    Defendants intended that Plaintiffs rely upon its statements, in order to sell it the insurance policy and make a monetary profit and/or deny paying policy benefits.

167.    Plaintiffs reasonably relied on these false statements that it would be paid insurance benefits under the terms of the policy and Oklahoma law.  Plaintiffs' reasonable reliance upon the misrepresentations induced it to obtain coverage under the policy, pay premiums, resulting in the ultimate denial of its claim.

168.    As a direct and proximate result of the aforementioned conduct of Defendants, and each of them, Plaintiff has been damaged in a sum to be determined according to proof at trial of this matter.

24

169.    As a direct and proximate result of the aforementioned conduct of Defendants, Plaintiffs have been damaged in the amount of policy benefits due and owed to it and continuing until fully paid.

170.    As a further direct and proximate result of the aforementioned conduct of Defendants, Plaintiffs have suffered extreme and severe mental and emotional distress including, but not limited to, excessive worry, fear, frustration, humiliation, and has thereby incurred general damages in an amount to be determined according to proof at time of trial.

171.    As a further, direct and proximate result of the aforementioned conduct of Defendants, Plaintiffs have been obliged to expend and/or incur liability for costs of suit, attorneys' fees, and related expense in an amount not yet fully ascertained, but which will be submitted at the time of trial.

172.    As a further, direct and proximate result of the aforementioned conduct of Defendants, Plaintiffs have suffered other special damages in amounts according to proof at the time of trial which include, but are not limited to, the lack of availability of said funds to it, and interest thereon at the lawful rate.

173.    As a direct and proximate cause of the aforementioned conduct of Defendants, Plaintiffs have been damaged in an amount in excess of the minimum jurisdictional limit of this Court, to be proven at trial.

## COUNT VI

Plaintiffs fully incorporates each and every allegation in the preceding paragraphs of this Petition as if each were fully iterated verbatim herein, and for its additional claims against Defendant State Farm and Defendant Wallenberg, alleges and states:

174.    At all times herein mentioned, Defendant Wallenberg was the soliciting agent for Plaintiffs' insurance policy which was issued by Defendant State Farm.

175.    At all times herein mentioned, Defendant Wallenberg owed a duty to exercise reasonable care to Plaintiffs in the purchase, renewal, and advice concerning the subject insurance policy and property insurance claims.

176.    At all times herein mentioned, Defendant Wallenberg agreed to undertake the duty to Plaintiffs to continue to provide advice concerning the subject insurance policy and property insurance claims.

177.    Defendant Wallenberg acted carelessly and unreasonably, proximately causing Plaintiffs harm, including denial of its insurance claim.

178.    As previously described above, Defendant Wallenberg breached its duty of care to Plaintiffs.  Plaintiffs contacted and engaged Defendant Wallenberg to procure insurance for their home.  Defendant Wallenberg was the soliciting agent and represented to Plaintiffs it had authority from Defendant State Farm to act on its behalf. Plaintiffs informed Defendant Wallenberg of the specific property to be insured and provided all details that Defendant Wallenberg requested about the home.  Plaintiffs asked Defendant Wallenberg if it could procure replacement cost coverage for their home so that, in the event of a storm loss, repairs could be made to fully restore their home to its pre-loss condition. Defendant Wallenberg assured the Foster Family she could do so, represented her familiarity with the type of insurance requested, and agreed (and represented that she did) procure such coverage that would provide full replacement coverage for the home in the event of a storm damage or loss.  Defendant Wallenberg informed the Foster Family that her agency would perform an inspection and calculations to determine the proper amount of replacement cost coverage.  Insurance agencies frequently use sophisticated software to calculate

26

limits of coverage.  The Foster Family agreed to allow Defendant Wallenberg to perform the inspection and use the sophisticated software to perform the calculations to determine sufficient limits of coverage. Defendant Wallenberg performed the calculations—which directly impact Plaintiffs' premiums—as if Plaintiffs' home was in perfect condition, without pre-existing issues.

179.    Defendant Wallenberg was required to perform an inspection of Plaintiffs' home prior to the policy's issuance to also determine whether there were any pre-existing issues with the property that would affect coverage.  Defendant Wallenberg was also required to maintain current information about the condition of Plaintiffs' home at each renewal. Further, Defendant Wallenberg was required to inform Plaintiffs if their home had pre-existing damage or was otherwise ineligible for the requested coverage. At no time, did Defendant State Farm or Defendant Wallenberg advise Plaintiffs' that their home had pre-existing damage, did not meet Defendant State Farm's underwriting guidelines or requirements, or did not qualify for the full replacement coverage Plaintiffs requested. Rather, Defendant Wallenberg represented there were no pre-existing issues with the property and the policy it procured for Plaintiffs, in the event of damages or loss, those damages or losses would be fully paid to repair or replace any of the property back to its pre-loss condition.  Plaintiffs relied on Defendant Wallenberg's representations and purchased and renewed the policy.  Contrary to Defendant Wallenberg's representations, Plaintiffs' claim was denied while contradicting the promised coverage.

180.    Plaintiffs relied on Defendant Wallenberg's representations.  Based on Defendant Wallenberg's representations, Plaintiffs trusted and believed Defendant Wallenberg had the requisite insurance agent skills and expertise to properly procure the insurance coverage Plaintiffs requested.

181.    At no relevant time did Defendant Wallenberg or Defendant State Farm ever advise Plaintiffs that Defendant State Farm would not pay for the necessary and proper repairs to restore the property to its pre-loss condition, nor that the policy issued failed to procure the sufficient amount of coverage to perform the necessary and proper repairs.

182.    At no relevant time did Defendant Wallenberg or Defendant State Farm ever advise Plaintiffs that the property had pre-existing conditions including long-term age-related deterioration and mechanical damage.

183.    Rather, Defendant Wallenberg and Defendant State Farm issued the policy and issued premium statements, and Plaintiffs paid such statements in a timely manner. At all times material hereto, the subject policy remained in full force and effect, and Plaintiffs complied with the terms and conditions of the policy.

184.    At all material times hereto, Defendant State Farm acted as the soliciting agent, employee, or ostensible agent of Defendant State Farm and Defendant State Farm is vicariously liable for the conduct of Defendant Wallenberg.

185.    Defendant Wallenberg owed Plaintiffs a duty to act with reasonable care, skill, and diligence in the procurement and maintenance of such insurance for Plaintiffs.

186.    Defendant Wallenberg had a duty to accurately inform Plaintiffs of all coverages, and advise of the benefits, risks, limitations, and exclusions in the coverage procured. Defendant Wallenberg also had a duty to perform a reasonable inspection of the property prior to procuring the replacement cost coverage and ensure no changes to the policy were necessary or required. Defendant Wallenberg further had a duty to ensure the property was properly insured to value and Plaintiffs had sufficient coverage in the event of a storm loss or damage prior to procuring the

insurance coverage and thereafter upon renewal to ensure no changes to the policy were necessary or required.

187.    Defendant Wallenberg was negligent and breached its duty owed to Plaintiffs by:

    a.    Failing to confirm whether the Insured Property met all underwriting guidelines with respect to the condition of the Insured Property and pre-existing damage;

    b.    Misrepresenting to Plaintiffs that the policy provided the appropriate amount of coverage to restore the property to its pre-loss condition in the event of a storm loss or damage;

    c.    Misrepresenting that storm damage, regardless of the severity, would be covered;

    d.    Misrepresenting to Plaintiffs that the property would be inspected to evaluate for pre-existing conditions including long term age-related deterioration and mechanical damage;

    e.    Issuing the policy, and the coverages (and premiums), that as written, do not provide sufficient coverage in the event of a storm loss or damage; and

    f.    Failing to perform all necessary inspections of the property.

188.    Based on Defendant Wallenberg's representations, Plaintiffs reasonably believed the insurance policy procured and maintained by Defendant State Farm conformed to their agreement with Defendant Wallenberg.

189.    Defendant Wallenberg was negligent and breached the duty owed to Plaintiffs by failing to adhere to appropriately aid in the underwriting process and failing to accurately and truthfully answer Plaintiffs' questions regarding policy coverages and pre-existing damage, and by promising Plaintiffs' the policy coverage selected and calculated by it for Plaintiff was correct and would fully insure Plaintiffs.

190.    Subsequently, Plaintiffs' claim was denied on the basis that the storm damage was caused by pre-existing conditions including long-term age-related deterioration and mechanical damage.

191.   As a direct and proximate result of the aforementioned conduct of Defendant Wallenberg, Plaintiffs have been damaged in the amount of policy benefits due and owing to them and continuing hereinafter until fully paid.

192.   As a direct and proximate result of the aforementioned conduct of Defendant Wallenberg, Plaintiffs have suffered extreme and severe mental and emotional distress including, but not limited to, excessive worry, fear, frustration, humiliation, and have thereby incurred general damages in an amount to be determined according to proof at the time of trial.

193.   As a direct and proximate result of the aforementioned conduct of Defendant Wallenberg, Plaintiffs have been obliged to expend and/or incur liability for costs of suit, attorneys' fees, and related expenses in an amount not yet fully ascertained, but which will be submitted at the time of trial.

194.   As a direct and proximate result of the aforementioned conduct of Defendant Wallenberg, Plaintiffs have suffered other special damages in amounts according to proof at the time of trial which include, but are not limited to, the lack of availability of said sums to it.

<u>**COUNT VII**</u>

Plaintiffs fully incorporates each and every allegation in the preceding paragraphs of this Petition as if each were fully iterated verbatim herein and, for its additional claims against only Defendant Swain alleges and states:

195.   Defendant Swain rendered professional opinions. He does not adjust the insurance claim for Defendant State Farm, but rather performs professional engineering consulting services.

196.   On or about June 30, 2022, Defendant Swain, performed an inspection of Plaintiffs' property.

197.    Defendant Swain owes a duty to Plaintiffs when performing engineering practices on Plaintiffs' buildings. Swain performed engineering outside his scope of work for the insurance company. Mr. Swain does not adjust insurance claims; nor is he a insurance adjuster.

198.    Defendant Swain owed Plaintiffs a duty to act with reasonable care, skill, and diligence in the practice of engineering.

199.    Defendant Swain owed Plaintiffs a duty to perform an ethical, reasonable inspection of the property and to write an accurate, unbiased engineering report based on facts present at the site and engineering principles.

200.    Defendant Swain knew his work as an engineer including inspection, investigation, evaluation, and reporting that would impact the benefits paid to Plaintiffs.

201.    Oklahoma's State Board of Licensure for Professional Engineers and Land Surveyors govern the engineering licenses of Swain. This entity requires engineers follow ethical standards when performing engineering.

202.    Ultimately, Swain negligently authored a report.

203.    Defendant Swain was negligent and breached his duty owed to Plaintiffs by:

a.   Negligently writing reports,

b.   Approving the engineering report which was not in conformity with applicable engineering standards;

c.   Failing to be objective and truthful in conducting engineering inspections;

d.   Authoring technical opinions that are not founded based on knowledge of the facts;

e.   Failing to disclose all known or potential conflicts of interest that could influence or appear to influence their judgment or the quality of service; and,

    f.   Distorting, altering, or misrepresenting facts for their own personal goals.

204.    Plaintiffs were damaged as a direct and proximate result of Defendant Swain's negligence.

205.    As a result of Defendant Swain's negligence, Plaintiffs suffered economic and non-economic damages including the amount of policy benefits due and owing to them and extreme and severe mental and emotional distress including, but not limited to, excessive worry, fear, frustration, humiliation, and have thereby incurred general damages in an amount to be determined according to proof at the time of trial and other consequential damages.

206.    The conduct of Defendants Day Consulting and Swain was intentional, willful, malicious, and in reckless disregard of Plaintiffs' rights, and is sufficiently egregious in nature as to warrant the imposition of punitive damages.

**WHEREFORE**, Plaintiffs Don Foster and Brenda Foster pray for judgment against Defendants State Farm Fire and Casualty Company, David Camp, Noah Basic, Rita Wallenberg Insurance Agency, Inc., and Corbin Swain for both compensatory damages and punitive damages, with interest and costs of this action, for a reasonable attorney fee, and for such other relief as may be appropriate. The amount sought as damages in excess of the amount required for diversity jurisdiction pursuant to §1332 of Title 28 of the United States Code.

MANSELL & ENGEL

By: _Ashley M Thul_

Adam Engel, OBA #32384
Ashley M. Thul, OBA #31245
204 North Robinson Avenue, 21st Floor
Oklahoma City, Oklahoma  73102-7001
T: (405) 232-4100 ** F: (405) 232-4140
Firm Email:  aengel@meclaw.net
             athul@meclaw.net

**ATTORNEYS FOR PLAINTIFF**

**ATTORNEY LIEN CLAIMED**

33

UNITED STATES
POSTAL SERVICE                    *We Redeliver For You!*

Download Informed Delivery™ APP to manage your redeliveries.

**Sorry we missed you while you were out.**

Date: ___2/25/24___

The item was sent by: _____

It was sent to: _Camp_

At this address: _1901 Rock QV Rd_

**About the missed delivery:**

It was a:

_____Package    _____Letter    _X_Large envelope

☐ USPS® Smart Parcel Locker Eligible
   *(Smaller than 17Hx13Wx23D)*

Available for pickup date: _Cortified_

This is the:

☑First attempt    ☐ Final notice

**To schedule a redelivery:**

**Scan the QR code or go to**
*usps.com/redelivery*

Article number:

**5293 0648 4169 1554**

**We have item/s for you which we could not deliver
because:**

☐ It requires a payment of $_____ for:
   _____Postage due    _____Customs
☐ Receptacle full/item oversized
☐ No secure location available
☐ No authorized recipient available
☐ Signature required
   ___must be 18+ years old   ___must be 21+ years old
☐ Other: _____

*Please see reverse to schedule redelivery or pickup.*
PS Form 3849, September 2022