## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1) DON FOSTER and<br>(2) BRENDA FOSTER,<br><br>                       Plaintiffs,<br><br>v.<br><br>(1) STATE FARM FIRE AND<br>CASUALTY COMPANY,<br>(2) DAVID CAMP,<br>(3) NOAH BASIC,<br>(4) RITA WALLENBERG INSURANCE<br>AGENCY, INC.,<br>(5) CORBIN SWAIN,<br>                     Defendant. | Case No: 5:24-cv-222-PRW |

## MOTION TO REMAND

**MANSELL & ENGEL**

M. Adam Engel, OBA #32384
Ashley M. Thul, OBA #31245
204 N. Robinson Avenue, 21st Floor
Oklahoma City, OK 73102-7201
T: (405) 232-4100 ** F: (405) 232-4140
E-mail: athul@meclaw.net
aengel@meclaw.net

## ATTORNEYS FOR PLAINTIFFS

Dated:  April 3, 2024

## **<u>TABLE OF CONTENTS</u>**

I.   BACKGROUND FACTS AND SUMMARY OF THE ARGUMENT ........................ 1

II.  ARGUMENT AND AUTHORITY .............................................................................. 6

    A.  Standard for Removal/ Remand ................................................................................ 6

    B.  Plaintiffs State a Viable Claim Against the Agency .................................................. 7

        i.   *Twombly* Deficiencies Do Not Prevent Remand.................................................. 7

        ii.  Plaintiffs State a Viable Claim for Failure to Procure ........................................ 8

    C.  Plaintiffs also State Viable Claims Against Basic, Swain, and Camp.................... 12

        i.   State Farm's Rule of General Tort Immunity for Employees is a Fabrication ............................................................................................... 12

        ii.  Whether Their Acts Were Intentional or Not, These Defendants May be Liable – But Regardless, "Intent" is a Question to be Decided by the Jury ........................................................................................................ 18

        iii. Trinity Baptist does not change the above stated rules.................................... 21

III. CONCLUSION ......................................................................................................... 25

# TABLE OF AUTHORITIES

**Cases:**

*Ada-Konawa Bridge Co. v. Cargo,*
  1932 OK 790, 21 P.2d 1 ........................................................................ 17, 23

*Ashcroft v. Iqbal,*
  *556 U.S. 662 (2009*) ................................................................................. 8

*Auld v. Auld,*
  553 F. App'x 807, 808 (10th Cir. 2014) ................................................ 6

*Bane v. Anderson, Bryant & Co.,*
  1989 OK 140, ¶ 15, 786 P.2d 1230, 1234 ...................................... 19, 21, 23

*Baker v. Saint Francis Hospital*
  *2005 OK 36* ¶ 16, 126 P.3d 602. 606 ....................................................... 18

*Bell Atlantic Corp. v. Twombly,*
  550 U.S. 544, 127S. Ct. 1955 ................................................................ 7, 8

*Bierman v. Aramark Refreshment Servs.,*
  2008 OK 29, ¶ 19, 198 P.3d 877, 884 ................................................. 20, 23

*Bill's Quick Stop v. LDF Cos.,*
  No. 16-CV-537-JED-JFJ, 2018 U.S. Dist. LEXIS 117029, at *4
  (N.D. Okla. July 13, 2018) ..................................................................... 3

*Blanks v. Allstate Ins. Co.,*
  No. CV 00-609 JP/DJS, 2000 U.S. Dist. LEXIS 24272
  (D.N.M. Nov. 17, 2000) ..................................................................... 20, 21, 23

*Boren v. Thompson & Assocs.,*
  2000 OK 3, ¶ 23, 999 P.2d 438, 447 ...................................................... 22

*Bourgeous v. Horizon Healthcare Corp.,*
  872 P.2d 852 (1994) ............................................................................... 21

*Bynum v. State Farm Fire & Cas. Co.,*
  No. CIV-18-540-D, 2018 U.S. Dist. LEXIS 134622 (W.D. Okla. Aug. 8, 2018) ...... 23, 24

*Cross v. Clemons,*
  Case No. CIV-21-00743-PRW, 2021 U.S. Dist. LEXIS 232822, *6 (Dec. 6, 2021) ....... 24

*Dodd v. Fawcett Publ'ns, Inc.*,
  329 F.2d 82, 85 (10th Cir. 1964).......................................................................... 7

*Dutcher v. Matheson*,
  733 F.3d 980, 988 (10th Cir. 2013)....................................................................... 6

*Employers Cas. Co. v. Barnett*,
  1951 OK 186, 235 P.2d 685........................................................................ 15, 16

*Fox v. Mize.*,
  2018 OK 75, ¶ 12, 428 P.3d 314, 322 ...................................................... 3, 16, 21

*Hardison v. Balboa Ins. Co.*,
  4 F. App'x 663, 673 (10th Cir. 2001) .................................................................. 9, 12

*Hensley v. State Farm Fire and Casualty Co.*,
  2017 OK 57, ¶ 19, 398 P.3d 11, 18.................................................................... 22

*Hernandez v. Crown Equip. Corp.*,
  Case No. CIV-20-00688-PRW, 2020 U.S. Dist. LEXIS 269079,
  *4 (W.D. Okla. Nov. 16, 2020) ........................................................................... 6

*Hooper v. Clements Food Co.*,
  1985 OK 6, ¶ 6, 694 P.2d 943, 944 ..................................................... 5, 6, 12, 13, 15, 16

*Johnson v. State Farm Fire & Cas*. Co.,
  Case No. 19-CV-250-JED-FHM, 2019 U.S. Dist. LEXIS 182496
  (N.D. Okla. Oct. 22, 2019) ................................................................................. 24

*Jonnada v. Liberty Ins. Corp.*,
  Case No. CIV-19-456-D, 2019 U.S. Dist. LEXIS 199645
  (W.D. Okla. Nov. 18, 2019) ................................................................................ 24

*Jordan v. Cates*,
  1997 OK 9, 935 P. 2d 289................................................................................. 17

*King v. Nat'l Sec. Fire & Cas. Co.*,
  656 So. 2d 1338 (Fla. Dist. Ct. App. 1995) ................................................ 9, 19, 22, 23

*MBA Commer. Constr., Inc. v. Roy J. Hannaford Co.*,
  1991 OK 87, ¶ 15, 818 P.2d 469, 474 ............................................................... 4, 22

iv

*Milner v. Eagle Materials, Inc.,*
  Case No. CIV-23-423-PRW, 2024 U.S. Dist. LEXIS 24855,
  (W.D. Okla. Feb. 13, 2024) ........................................................................ 13

*Montano v. Allstate Indemnity*,
  211 F.3d 1278, 2000 WL 525592 at *5-6 (10th Cir. 2000) ........................ 6, 12, 14, 25

*Nakamoto v. State Farm Fire & Cas. Co*.,
  CIVIL NO. 20-00243 SOM, 2020 U.S. Dist. LEXIS 143486
  (D. Haw. Aug. 11, 2020) ........................................................................ 21, 23

*Nerad v. AstraZeneca Pharms., Inc.*,
  203 F. App'x 911, 913 (10th Cir. 2006) ........................................................ 7, 8

*Orthman v. Premiere Pediatrics, PLLC*
  2024 OK CIV APP 7, ¶15, (Okla. Civ. App. 2024) ............................................ 8

*Phillips v. State Farm Fire & Cas. Co.,*
  No. CIV-22-982-D, 2023 U.S. Dist. LEXIS 10036, at *8
  (W.D. Okla. Jan. 20, 2023) ........................................................................ 7, 11

*Ridings v. Maze,*
  2018 OK 18, 414 P.3d 835 ........................................................................ 8

*Rogers v. Brummet*
  1923 OK 711, 220 P. 362, 92 Okla. 216 ........................................................ 19, 21, 23

*Samara v. Sw. Bell Yellow Pages, Inc.,*
  No. CIV-06-0494-HE, 2006 U.S. Dist. LEXIS 44945 (W.D. Okla. June 28, 2006) ........ 14

*S. Sooner Holdings, LLC v. Travelers Indem. Co. of Am.*,
  No. CIV-21-179-PRW, 2022 U.S. Dist. LEXIS 229487
  (E.D. Okla. Dec. 21, 2022) ........................................................................ 10, 11

*Schovanec v. Archdiocese of Okla. City,*
  2008 OK 70, ¶ 48, 188 P.3d 158, 176 ........................................................ 18

*Seitsinger v. Dockum Pontiac, Inc.,*
  1995 OK 29, 894 P.2d 1077 ........................................................................ 13

*Sisk v. J.B. Hunt Transp., Inc*.
  2003 OK 69, ¶ 4, 81 P.3d 55, 64 ................................................................ 6, 14, 15, 16, 21

v

*Smoot v. B & J Restoration Servs.,*
  2012 OK CIV APP 58, ¶ 16, 279 P.3d 805, 814 ............................................................. 14


*Smoot v. Chicago, Rock Island Pac. Rd. Co.*,
  378 F. 2d 882 (10th Cir. 1967), 378 F.2d 879, 882 ........................................................ 10

*Sooner Legends, LLC v. Navigators Specialty Ins. Co.,*
  Case No. CIV-21-552-C, 2021 U.S. Dist. LEXIS 147785 (W.D. Okla. Aug. 6, 2021).... 11

*Swickey v. Silvey Cos.*,
  1999 OK CIV APP 48, ¶ 8, 979 P.2d 266, 268 ............................................................. 8, 9

*Torres v. Cintas Corp.,*
  Case No. 08-CV-185-CVE-PJC, 2008 U.S. Dist. LEXIS 33118
  (N.D. Okla. April 22, 2008) ............................................................................................ 13

*Trinity Baptist Church v. Bhd. Mut. Ins. Servs.*,
  2014 OK 106, 341 P.3d 75 ....................................................................... 21, 22, 24

*Walker v. Matthews,*
  1988 OK 143, 775 P.2d 273 ............................................................................................ 14

*Yeary v. Safeco Ins. Co. of Am.,*
  No. 22-CV-0250-CVE-SH, 2022 U.S. Dist. LEXIS 146925, *8-9
  (N.D. Okla. Aug. 17, 2022) ............................................................................................ 11

**Statutes:**

Okla. Stat. tit. 76, § 2 ......................................................................................... 19, 21

**Other Authority:**

Fed. R. Civ. P. 9(b) ................................................................................................ 2

Fed. R. Civ. P. 12(b)(6) ...................................................................................... 12

OUJI Instruction 7.4 ............................................................................................ 17

Plaintiffs request an order remanding this case to the District Court for Cleveland County, Oklahoma. As shown herein the claims against the individual Defendants are viable claims such that there is no fraudulent joinder:

## I. Background Facts and Summary of the Argument

Plaintiffs sought coverage for their Cleveland County home through the Wallenberg Insurance Agency. Doc. 1-7, Am. Pet. ¶151. Plaintiffs expressed concern that they be able to fully restore their home in the event of storm damage. *Id.* Rita Wallenberg inspected the home—or at least she told Plaintiffs that she "performed a thorough inspection of the Property"—and reported that the home was "in good condition" such that it qualified for replacement cost coverage <u>with no concerns about preexisting damage</u>. *Id.* at ¶ 152. Not only did Wallenberg not disclose *any* preexisting **mechanical** or **age-related damage** to the home's roofing surfaces, but she stated affirmatively that "no pre-existing damage or concerns were found." *Id.* Had Wallenberg reported any such damage, Plaintiffs would have taken any needed corrective action to be sure that any later loss would be covered. *Id.* As we now know, the policy did not provide the coverage promised by Wallenberg.

Wallenberg also claimed to have performed the required calculations to determine the proper amount of coverage for Plaintiffs' home. *Id.* at ¶ 153. Based upon her claimed expertise and computerized calculations, Wallenberg determined the amount of coverage Plaintiffs supposedly needed based upon the home being in perfect condition without pre-existing damage. *Id.* That resulted in a premium payment that was higher than it should have been because it did not take into consideration the fact that the insurer would never actually pay a roof claim but would instead deny any such claim based upon the claimed

mechanical damage and "long-term age-related deterioration." *Id.* at ¶¶ 153-54. In other words, had Plaintiffs (and State Farm) been told by Wallenberg that the roof was essentially uninsurable (i.e., that the insurer would never pay a roof claim based upon the supposed "long-term age-related deterioration" later claimed by State Farm) the premium would have been lower to account for the fact that the insurer was absolved of the risk of paying a roof claim. As noted above, Plaintiffs then would have taken corrective action (or at minimum sought a reduced premium for coverage that in essence excluded roof loss). The extra premium paid by Plaintiffs for coverage they could never access is not something that can ever be recovered in the action against State Farm.

When the roof was damaged by wind and hail causing water to leak in and damage the home's interior (*Id.* at ¶ 19), the insurer denied coverage (citing the claimed noncovered damage discussed above). This was contrary to representations made by Wallenberg when the policy was purchased and again at renewal—that there were no pre-existing conditions to prevent coverage of a roof claim. *Id.* at ¶ 152-154. In addition to constituting a viable claim against Wallenberg for failure to procure coverage as promised, the above gives rise to a viable claim of misrepresentation or constructive fraud.[1]

In addition to viable claims against Wallenberg, there are also viable claims against Camp, Swain, and Basic. Plaintiffs address those claims in reverse order:

State Farm misstates the claim against Basic. As noted by State Farm, Basic worked

---

[1] *Id.* at ¶¶ 151-194. "[M]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally," as Plaintiffs did at Doc. 1-7, ¶¶ 154-56, 159-60. Fed. R. Civ. P. 9(b).

for a company called Ladder Now which State Farm hired to measure and photograph the roof. As Plaintiffs have alleged, Basic "walked all over the Foster's roof causing ["footfall"] damage. . .." *Id.* at ¶ 136. That "footfall" was the very "mechanical damage" now cited by State Farm as the basis for its claim denial. More pointedly, the engineer hired by State Farm, Corbin Swain, determined (Plaintiffs believe incorrectly) that the damage was not from the storm but was instead "mechanical damage . . . in the form of scuff marks and/or abrasions on the shingles" (along with "age-related wear and weathering"). Pl. Ex. 1, Excerpt from Swain Report. Swain was more direct in a later paragraph: "This granule loss was consistent with weathering of the roofing system and/or **foot traffic on the roof surface.**" *Id.* (Emphasis added). <u>If State Farm is correct that the roof damage was **noncovered** mechanical/footfall damage (and wear and tear) and that *Trinity* applies to bar the claim against Basic</u>, **then Plaintiffs are left without a remedy for that noncovered** <u>**damage. That is because there would be no breach of contract (since the policy does**</u> <u>**not cover such loss) and without a breach of contract, there is no bad faith.**</u> **Instead of that absurdity, there is indeed a viable tort claim against Basic for causing such noncovered damage to Plaintiffs' roof.** *Trinity* is no shield to Basic for his intentional misconduct. There is also no danger of double recovery for such noncovered damages.[2] Instead, the very real danger is one of *no recovery for Basic's damage causing conduct.*

   Also contrary to State Farm's assertions, the claims against Wallenberg and Basic

---

[2] The jury will be instructed that it cannot hold Basic and State Farm separately liable for the same loss. *Fox v. Mize*, 2018 OK 75, ¶ 12, 428 P.3d 314, 322; accord *Bill's Quick Stop v. LDF Cos.*, No. 16-CV-537-JED-JFJ, 2018 U.S. Dist. LEXIS 117029, at *4 (N.D. Okla. July 13, 2018).

are timely. A claim for negligence does not accrue when there is negligent conduct or even when the plaintiff discovers the negligent *conduct*; such a claim only accrues when Plaintiffs suffered damages that are certain rather than speculative. *MBA Commer. Constr., Inc. v. Roy J. Hannaford Co.*, (Tort claim against architect/engineer did not accrue when contractor discovered error in plans but later when told it would not be paid for project because of delays caused by the faulty plans). Additionally, the <u>injury</u> must be discovered or at least "discoverable" for a cause to accrue. *Id.* Application of the discovery rule is inherently a question of fact. To this point, though Plaintiffs knew about Wallenberg's (and perhaps even Basic's) existence, Plaintiffs did not know of their negligence **or of injury** until Corbin Swain attributed the damage to noncovered footfall and wear and tear. Plaintiffs only learned that from Swain's July 29, 2022, report. State Farm's earlier claim estimate (Doc. 1-15) did not inform Plaintiffs that some of their damage was noncovered mechanical/footfall/age-related damage.

Next is Plaintiffs' claim against Engineer Swain. State Farm contends that *Trinity* bars *all claims* against *any party* hired by an insurer to assist with a claim. It does not. One, *Trinity* refers only to **independent adjusters**. Swain is a licensed professional engineer (Doc. 1-7, ¶¶ 195-201) and there are valid legal reasons for holding licensed professional engineers independently liable for their work. Two, regardless of whether *Trinity* can apply to an engineer, <u>that case does not protect Swain from his intentional, fraudulent misconduct</u> (which conduct is stated at *Id.* at ¶¶ 201-206). Finally, regarding Swain, the jury may well determine that it was reasonable <u>for State Farm</u> to rely upon Swain's <u>professed</u> expertise yet still find that <u>Swain's conduct</u> was tortious and caused Plaintiffs' injury (by way of

forcing suit to recovery policy benefits). In other words, the jury may find that the claim denial was "reasonable" from State Farm's perspective (by virtue of State Farm having had a reasonable basis for relying upon Swain's findings) but nonetheless illegitimate as far as Swain's conduct goes. As with Basic's conduct, that again puts Plaintiffs in the position of having no means to recover for injury relating to Swain's misconduct (such as delay in getting the claim paid, having to file suit, and incurring unnecessary litigation expense and costs) since Plaintiffs would be denied their bad faith action.

That leaves Plaintiffs' claim against David Camp, the State Farm employee adjuster. As with Swain, the claim against Camp is not for adjusting a claim—it is for the intentional tort of false representation. As set out in the Amended Petition, Camp made knowingly false representations to Plaintiffs about the timing of Swain's inspection that induced Plaintiffs to permit the policy limitations period to run. *Id.* at ¶ 126. That is why State Farm is able to claim a limitations defense. Doc. 8, Affirmative Defenses, ¶ 9. Though Plaintiffs have alleged conduct that gives rise to an inference that State Farm waived limitations (Doc. 1-7 at ¶ 19), the jury may disagree (the waiver issue is not currently before the Court). If so, Plaintiffs' recourse is against Camp for inducing Plaintiffs to sit on their rights and lose their claim. Further, if the jury determines that Camp's intentional misconduct was outside the scope of his authority as an adjuster (intentional torts are not usually part of the employment), then Plaintiffs are truly without recourse if Camp evades suit.

Finally, State Farm misapprehends Oklahoma law and claims that an employee may not be liable for tortious conduct that falls within the scope of their employment. *Hooper,* cited by State Farm (Doc. 1, pp. 8-9) involved an employee who was legally immune from

suit due to parental immunity. That case holds only that the employer may nonetheless be liable for such an employee's torts despite the employee's law-conferred immunity. That has no bearing on the general rule in Oklahoma that "master and servant can be pursued separately in a respondeat superior case." *Sisk v. J.B. Hunt Transp., Inc*., 2003 OK 69, ¶ 4, 81 P.3d 55, 64 (Watt, C.J. dissenting) (citing *Hooper*). For all the above reasons, State Farm cannot meet its burden of showing that it is impossible for Plaintiffs to recover against the nondiverse Defendants and remand is required.

## II. Argument and Authority

### A. Standard for Removal/Remand

State Farm faces the difficult burden that it must prove its claim of fraudulent joinder "by clear and convincing evidence," with all doubts "resolved in favor of remand." *Auld v. Auld,* 553 F. App'x 807, 808 (10th Cir. 2014). The Court must presume that all of Plaintiffs' allegations are true and resolve all uncertainties (or "ambiguities") regarding state substantive law against the defendant. *Dutcher v. Matheson,* 733 F.3d 980, 988 (10th Cir. 2013) (emphasis added). The fraudulent joinder standard is even "more exacting" than the standard for a motion to dismiss: "A claim which can be dismissed only after an intricate analysis of state law is not so wholly insubstantial and frivolous that it may be disregarded for purposes of diversity jurisdiction." *Montano v. Allstate Indem.,* 2000 U.S. App. LEXIS 6852, 2000 WL 525592, at *5-6 (10th Cir. 2000) (emphasis added). For these reasons, the "fraudulent joinder" doctrine is reserved for only "the most egregious of circumstances." *Hernandez v. Crown Equip. Corp*., Case No. CIV-20-00688-PRW, 2020 U.S. Dist. LEXIS 269079, *4 (W.D. Okla. Nov. 16, 2020). As shown below, State Farm cannot meet its

"heavy burden."

## B. Plaintiffs State a Viable Claim Against the Agency

### i. *Twombly* Deficiencies Do Not Prevent Remand

Contrary to State's Farm's claim, Plaintiffs' allegations against Wallenberg are not so vague. The agency claimed to have inspected the property and found no preexisting concerns to limit coverage in the event of a storm.[3] Additionally, Wallenberg conducted the inspection that resulted in the premium being assessed on the basis of the home being in good enough condition that a roof loss claim *would be covered instead of a discounted premium based upon the defacto "roof loss exclusion" that Plaintiffs got as a result of the post-claim evaluation of the shingles as age-damaged. As shown next, these allegations give rise to a claim for failure to procure requested or promised coverage.*

Even if Plaintiffs' claims do not meet the *Twombly* plausibility standard that does not equate to fraudulent joinder. *See e.g.*, *Nerad v. AstraZeneca Pharm., Inc.*, 203 F. App'x 911, 914 (10th Cir. 2006) (unpublished) (dismissing appeal of remand motion as unreviewable where district court rejected fraudulent joinder claim because pleading deficiency could be corrected by amendment); *Phillips v. State Farm Fire & Cas. Co.*, No. CIV-22-982-D, 2023 U.S. Dist. LEXIS 10036, at *8 (W.D. Okla. Jan. 20, 2023) (citing *Neradi*). It is also important to note in this regard that Plaintiffs filed this action in the state

---

[3] The Wallenberg "declaration" does not decide this matter in the face of Plaintiffs' contrary allegations. *Dodd v. Fawcett Publ'ns, Inc.*, 329 F.2d 82, 85 (10th Cir. 1964) ("federal court [may not] pre-try, as a matter of course, doubtful issues of fact to determine removability; the issue must be capable of summary determination and be proven with complete certainty").

courts of Oklahoma where *Twombly* and *Iqbal* have no application. *See e.g.*, *Ridings v. Maze*, 2018 OK 18, 414 P.3d 835 (identifying pleadings that satisfy the Oklahoma standard).[4] For that reason it makes no sense to take this case from state court where the allegations were certainly sufficient—and subject to amendment—and then claim fraudulent joinder because the claims may not satisfy the federal pleading standard (where amendment is also permissible). That would turn the rule on its head that says a plaintiff is entitled to its choice of forum and make the fraudulent joinder standard less stringent rather than more stringent than the standard for motions to dismiss under Fed. R. Civ. P. 12(b)(6). Regardless, Plaintiffs' allegations do not reveal an *impossibility* of recovery for failure to procure coverage as requested or promised because amendment is possible, per *Nerad.* Thus, even if Plaintiffs' allegations are "vague," that does not equate to a fraudulent joinder.

### ii.  Plaintiffs State a Viable Claim for Failure to Procure

State Farm cites the right case, *Swickey v. Silvey,* 1999 OK CIV APP 48, 979 P.2d 266, for the rule regarding failure to procure insurance coverage (Doc. 1 at 13) but misses its import. Per *Swickey,* failure to procure coverage gives rise to both contract *and* tort liability. *Swickey,* at ¶ 8, 268. Also, liability may be predicated on either a failure to procure *requested* coverage **or** a failure to procure *promised* coverage (there need not be both):

> The contract theory of an insurance agent's liability is often based on failure to obtain any insurance as promised, but may also consist of failure to obtain insurance as requested.

---

[4] *See also, Orthman v. Premiere Pediatrics, PLLC,* 2024 OK CIV APP 7, ¶ 15, --P.3d-- .

*Id.* at ¶¶ 9. Also, it is not just a failure to procure <u>any</u> policy or a failure to procure the <u>correct policy limit</u> that gives rise to liability. Failure to procure may be premised upon any request or promise for coverage of a certain kind, amount, "or breadth."

*Hardison v. Balboa Ins. Co.*, 4 F. App'x 663, 673 (10th Cir. 2001) (quoting *Swickey*).

The above applies here. Plaintiffs requested coverage to fully replace the roof in the event of a storm. Wallenberg inspected the roof and reported that it was in good condition such that no exclusions would prevent the promised coverage but then procured a policy that excluded coverage on that precise basis when the roof was later damaged by wind and hail and began to leak water into the house.

Tort liability arises because an agent owes a duty of care to procuring promised coverage <u>and to "correct" coverage to maintain the promised coverage</u>:

> There remains, however, a duty on the part of Agency to exercise reasonable care and skill in performing its tasks, i.e. <u>procuring insurance and making any necessary corrections or adjustments after a policy is issued</u>. An agent has the duty to act in good faith and use reasonable care, skill and diligence in the procurement of insurance and <u>an agent is liable to the insured if, by the agent's fault, insurance is not procured as promised and the insured suffers a loss.</u>

*Swickey,* ¶ 13, 979 P.2d at 269 (emphasis added). This negates State Farm's claim (Doc. 1 at 17) that Wallenberg owed no duty to "monitor" the policy to make sure it continued to provide the promised coverage.

State Farm relies upon cases like *Gellner, Country Gold,* and *Steinkamp* (from this Court). In *Gellner* the insured asked only for "collision" coverage and got just that. The insured in *Country Gold* alleged generically that the agent failed to procure "adequate" coverage. And in *Steinkamp,* this Court may recall, the insured asked only for "replacement

cost" coverage. In none of those cases did the agent inspect the home and promise there were no preexisting conditions to potentially affect coverage.

Instead of the above cases, this case is exactly like another remand case decided by this Court: *S. Sooner Holdings, LLC v. Travelers Indem. Co. of Am.*, No. CIV-21-179-PRW, 2022 U.S. Dist. LEXIS 229487 (E.D. Okla. Dec. 21, 2022). There, some Oklahoma insureds hired a Tulsa insurance agency to procure coverage for their Texas property. This Court noted that coverage promise as follows: "According to Plaintiffs, when Insurica helped Plaintiffs procure its policy with Travelers, Insurica represented to Plaintiffs that there were no preexisting issues with its property that would impact future coverage under the Travelers policy." *Id.* at *2-3. Also per the Court: "And Plaintiffs claim to have relied on this representation when they selected the Travelers policy. But according to Plaintiffs, Insurica's representation turned out to be false because Travelers would later deny coverage under the policy on the basis of prior damage to the property." *Id.* at *3. Indeed, that insurer denied coverage for damage the plaintiffs claimed was from a storm on the very same basis as did State Farm here, "age-related deterioration to the roof":

> In August of 2020, Plaintiffs filed a claim with Travelers, alleging damage to the insured property. Plaintiffs claimed that the damage was caused by winds from a recent hurricane. Shortly thereafter, Traveler's partially denied Plaintiffs' claim. Travelers maintained that most of the damage to Plaintiffs' property was caused by preexisting property damage, including age-related deterioration to the roof.

*Id.* at *2. The Court rejected Travelers' fraudulent joinder claim and remanded because the court does not "pre-try" facts that are not "proven with complete certainty" *Id.* at *4-5 (citing *Smoot v. Chicago, R.I. & P. R. Co.*, 378 F.2d 879, 882 (10th Cir. 1967). For the

same reasons as in *South Sooner,* this case too should be remanded.

In addition to this Court's *South Sooner* case, this case similar to *Sooner Legends, LLC v. Navigators Specialty Ins. Co*., Case No. CIV-21-552-C, 2021 U.S. Dist. LEXIS 147785 (W.D. Okla. Aug. 6, 2021). That insured was a hotel, restaurant, and catering business that requested coverage for "all insurable risks [it] might face." *Id.* at *4. The court characterized that allegation thusly: "Plaintiff[s have] raised allegations which, if proven, would establish that Plaintiff[s] requested specific coverage and Defendant [agent] promised to provide that coverage." *Id.* at *5. As it turned out the policy that was procured did not cover risks associated with the Covid pandemic. The case was remanded because it could not be said "that Plaintiff can prove no set of facts that would entitle it to relief." *Id.* at *5.

This case is also like *Yeary v. Safeco Ins. Co. of Am*., No. 22-CV-0250-CVE-SH, 2022 U.S. Dist. LEXIS 146925 (N.D. Okla. Aug. 17, 2022). Here, Plaintiffs asked for a replacement cost policy that would fully restore the home to its pre-loss condition in the event of a storm. Doc. 1-7, ¶ 151. Similarly, in *Yeary*, the insured asked for a replacement cost policy that would "fully replace their fishing dock in the event of a loss." *Yeary,* 2022 U.S. Dist. LEXIS 146925 at *2. The policy that was procured was a replacement cost policy that even provided coverage for the dock (at least there was no "dock" exclusion) but the policy had several exclusions that applied to many of the common ways a dock might be damaged. *Id.* at *10-11. The case was remanded.

Finally, *Phillips v. State Farm Fire & Cas. Co.*, No. CIV-22-982-D, 2023 U.S. Dist. LEXIS 10036 (W.D. Okla. Jan. 20, 2023), is also in point. Like here, that agent calculated

11

and set the replacement cost policy limits and promised a policy that would pay to put the property back "to its pre-loss condition in the event of a loss." *Id.* at *5. But when the home was damaged by a storm the insurer instead estimated for a cheaper substitute window. *Id.* Like here, the insurer argued that the plaintiff was not harmed by the failure to procure a certain kind of policy but was instead harmed by the way the claim was adjusted. *Id.* at *7-8. Judge DeGiusti rejected that argument because the allegations were that the agent had promised that the windows would be replaced with the same kind of windows. In a similar manner here, the agent promised that the home would be fully repaired back to its pre-loss condition based upon her representation that there were no pre-existing damage concerns.

As in the above cases, Plaintiffs state viable claims against the procuring agent; that alone requires remand. *Montano,* 2000 U.S. App. LEXIS 6852, at *6 ("remand is required if any one of the claims against the non-diverse defendant[s] is possibly viable"). These cases also all show that State Farm is incorrect in that failure to procure must be based on a complete failure to provide any policy or a failure to provide the proper policy limit. Instead, as noted in *Hardison,* the Oklahoma rule is that an agent is responsible for any promise to provide coverage of a "certain breadth."

### C. Plaintiffs Also State Viable Claims Against Basic, Swain, and Camp

### i. State Farm's Rule of General Tort Immunity for Employees is Fabrication

Plaintiffs must first address State Farm's misstatement of Oklahoma law that has been adopted by some federal courts – that an employee cannot be personally liable for torts committed in the course and scope of their employment. That claim is based upon a statement from the *Hooper* case that is then taken out of context:

> Generally, courts in this country hold that an employer is liable for the torts of its employee occurring in the course and scope of employment, although the employee is personally immune from suit.

*Hooper v. Clements Food Co.*, 1985 OK 6, ¶ 6, 694 P.2d 943, 944.[5] This statement never meant to say that an employee is always "immune from suit" for negligence within scope of employment. Instead, that particular employee in *Hooper* was actually immune from suit because of "the doctrine of parental immunity." *Id.* at ¶ 1 (emphasis added) (the suit was brought by a mother after her child was injured as a passenger in a work vehicle driven by the father). This case holds—in the language quoted above—that the employer may still be held liable even under the unusual circumstance where the employee has a law-conferred immunity. Indeed, the opinion even intimates that the employer may have a right to indemnification from the employee because that relationship is not protected by any immunity. *Id.* at ¶ 11, 945-46. *How can that be if the employee is immune from liability?*

Insurers detach "although the employee is personally immune from suit" from its contextual moorings to reverse the meaning of *Hooper* to create a general rule of employee immunity that was never intended by the Court. Likely due to imprecise briefing by plaintiffs, some federal courts have been taken in by this claim.[6]

---

[5] The majority rule referred to in *Hooper* is the rule that an employee's law-conferred immunity does not protect the employer in respondeat superior. The Court did not mean to say that an employee cannot be held liable for torts within the scope of employment.

[6] *See E.g.*, *Torres v. Cintas Corp.*, Case No. 08-CV-185-CVE-PJC, 2008 U.S. Dist. LEXIS 33118 (N.D. Okla. April 22, 2008) (cited by State Farm (Doc. 1, at 7)). This Court stated such a rule in *Milner v. Eagle Materials Inc.*, Case No. CIV-23-423-PRW, 2024 U.S. Dist. LEXIS 24855, (W.D. Okla. Feb. 13, 2024), but those parties agreed to such a rule. *Id.* at *4. *Seitsinger v. Dockum Pontiac Inc.*, 1995 OK 29, 894 P.2d 1077, sometimes cited for such a rule, was a contract case. The corporate formalities protected Mr. Dockum from

*Sisk v. J.B. Hunt Transp., Inc*., 2003 OK 69, 81 P.3d 55, shows the above. Mr. Sisk was injured by Mr. Courville who was on the job at the time for a transport company. Sisk sued Mr. Courville for negligence and the transport company in respondeat superior. Of note, <u>the Court never says that Courville was immune from suit</u>. Instead of saying that Courville never should have been in suit because he was immune, the Court notes instead that Sisk's second dismissal of Courville operated as an effective dismissal with prejudice under the circumstances. The case then ultimately holds that such an "affirmative" "release" of the servant released the master. That holding makes no sense if the employee was never liable to begin with. Indeed, in reaching that holding, the Oklahoma Supreme Court affirms several pertinent rules.

First, the Court states—without criticism—that the Oklahoma "COCA" "noted that extant jurisprudence teaches that where master and servant are proceeded against jointly,

---

personal liability *only in contract. See e.g.*, *Smoot v. B & J Restoration Servs*., 2012 OK CIV APP 58, ¶ 16, 279 P.3d 805, 814 (officers and directors are not ordinarily liable for corporation's breach of contract but "may be individually liable for their tortious conduct even if they are acting on behalf of the corporation and regardless of whether a corporation may be held vicariously liable for the torts of its officers and directors"). Also, Mr. Dockum played no individual role in the matter such that he was guilty of no tortious conduct. Then there is *Walker v. Mathews*, 1988 OK 143, 775 P.2d 273. This short opinion appears to conflict with *Sisk* and the cases discussed below this point. It is likely the Court meant only that the chaperones mere presence at the campground did not constitute a positive act in tort (just as Mr. Dockum had no role in the subject transaction in that case). Judge Heaton interprets *consistently* with this understanding in *Samara v. Sw. Bell Yellow Pages, Inc*., No. CIV-06-0494-HE, 2006 U.S. Dist. LEXIS 44945 (W.D. Okla. June 28, 2006). Whatever was meant by *Walker*, it cannot conflict with the clear statements in the more recent *Sisk* case and the other cases cited and discussed below. Regardless, ambiguity in state law requires remand. *Montano*, 2000 U.S. App. LEXIS 6852, at *5. Also, with respect to Basic, Swain, and Camp, Plaintiff alleges conduct outside the scope of employment such that *Walker* can have no application.

14

and the master's liability rests solely on respondeat superior, a servant's dismissal without prejudice does not bar the action against the master. . ..." *Id.* at ¶ 4, 57. That extant jurisprudence (like the ultimate holding of *Sisk*) makes no sense if a servant cannot be individually liable for torts within the scope of employment. The Court then holds that it was the plaintiff's affirmative act resulting in a bar to reprosecution that "extinguished his claim against Courville." *Id.* at ¶ 10, 59. That then extinguished the claim against the master because "[u]ninterrupted viability of the claim against a servant is the *sine qua non* of the master's continued liability in respondeat superior." *Id.* at ¶ 11. Surely a claim cannot be both "viable" and *barred by respondeat superior liability as claimed by State Farm.*

The Court then distinguishes *Hooper* on the basis that it "employs the accepted fiction (underlying the doctrine of respondeat superior) when an action is brought solely against a master." *Id.* at ¶ 12, 60-61. That is why *Hooper* holds there can be liability against the employer even if the negligent employee is for some reason already <u>immune</u> from suit. *Sisk* makes this distinction even more clear in footnote 19 by the manner it distinguishes *Hooper* from *Emplrs Cas. Co. v. Barnett*, 1951 OK 186, 235 P.2d 685 (emphasis added):

> The former situation, in *Hooper*, supra note 6, <u>addressed whether a harm-dealing servant's law-conferred (parental) immunity operates to discharge the master's respondeat-superior liability to a third party</u>. In *Hooper* we answered in the negative by holding that servant's <u>law-conferred immunity</u> does not constitute an *ex lege* release of the master. ***

> *** *Employers Cas. Co*. "<u>stands for the rule that an employer and his employee may be proceeded against jointly or severally where employer's liability is based on doctrine of respondeat superior</u>, and where proceeded against jointly, dismissal without prejudice as to employee does not preclude prosecution of action against employer."

Our case is like *Employers Cas. Co.*—none of the individual Defendants have "law

15

conferred immunity." Thus, as in *Employers Cas. Co*, all may be "proceeded against jointly or severally [without or without the presence of their employers/principals]."

It is in the above context that Justice Watt notes in his dissent that "Oklahoma law provides that master and servant can be pursued separately in a respondeat superior case." Justice Watt also notes that it makes no difference from a respondeat superior perspective if the "employee was absent from the proceeding" just as it would make no difference (again regarding respondeat superior) "if the employee was present." *Id.* at ¶ 4 of the dissent. He too cites *Employers Casualty* which states the following on the question of whether the employee may be liable in tort (quoting 135 A.L.R. 263):

> While but few cases have been discovered dealing directly with the point, the rule appears to be quite well established that a plaintiff may bring separate actions against a master and his servant, or a principal and his agent, to recover for the negligence of the servant or agent, where the master's or principal's only responsibility is derivative. And the rule has been applied alike in jurisdictions recognizing that master and servant, or principal and agent, may be joined as defendants in such an action, and in jurisdictions denying the right to join them as defendants.

*Emplrs Cas. Co. v. Barnett,* 1951 OK 186, ¶ 11, 235 P.2d 685, 689. This proves Plaintiffs' point made above regarding what "majority rule" *Hooper* was applying. Given that both the majority and the dissent in *Sisk* affirm the rule of *Employers Casualty,* it certainly was not a rule granting broad tort immunity to employees.

Thus, *Sisk* confirms that *Employers Casualty* is still good law—both employee and employer are liable for employee torts within the scope of employment. So too does *Fox v. Mize,* 2018 OK 75, 428 P.3d 314. Like *Sisk*, *Fox* involves negligence claims against <u>both employee and employer.</u> *Id.* at ¶ 0, 317 (it was stipulated that the employee's actions were

within the scope of his employment). Oklahoma even has a jury instruction for these situations: OUJI Instruction 7.4 - PRINCIPAL AND AGENT OR EMPLOYER AND EMPLOYEE - BOTH PARTIES SUED- LIABILITY WHEN NO ISSUE AS TO RELATIONSHIP OR SCOPE OF AUTHORITY OR EMPLOYMENT.

Finally on this topic, an older case, *Ada-Konawa Bridge Co. v. Cargo,* 1932 OK 790, 21 P.2d 1, negates State Farm's immunity rule. There, a toll-booth agent shot a customer who tried to pass without paying the toll. The case was tried, and judgment entered against the toll company. On appeal the company argued that the booth operator's actions necessarily fell outside the scope of his employment such that the company could not be legally responsible. The Court rejects that argument in the seminal Oklahoma case regarding an employer's potential liability for heinous acts by an employee. *Id.* at ¶ 33, 7.

The Court affirmed judgment against the company because the jury necessarily found that the employee shot the customer in an ill-advised attempt to collect the toll for his employer. *Id.* at ¶ 34. <u>Though for some reason not set out in the opinion, the employee does not appear to have been sued in *Ada-Konowa.* Still, under State Farm's interpretation of the law, the employee would have been immune from suit since he was within the scope of his employment when he shot his customer.</u> That cannot be.[7] Employee/agent Defendants are just not entitled to expansive tort immunity. So too here. Since Basic, Swain, and Camp lack suit immunity they may be held liable for their negligent acts.

---

[7] *Jordan v. Cates*, 1997 OK 9, 935 P.2d 289 also shows that both employee and employer may be held liable for intentional acts within the scope of employment.

### ii. Whether Their Acts Were Intentional or Not, These Defendants May Be Liable—But Regardless, Their "Intent" is a Question to be Decided By the Jury

Whether the jury determines the individual Defendants acted intentionally or negligently, they may be liable. Generally, "it is not within the scope of an employee's employment to commit an intentional tort upon a third person." *Schovanec v. Archdiocese of Okla. City*, 2008 OK 70, ¶ 48, 188 P.3d 158, 176. It is true this rule does not apply when the act is one which is "fairly and naturally incident to the master's business." *Id.* There are even times a court may decide as a matter of law that a certain intentional tort is *not* within the course of employment. It would be an unusual case, though, where the court determined *as a matter of law that an intentional tort was within the course and scope of employment.* That is inherently a fact question for jury resolution. *See e.g.*, *Baker v. Saint Francis Hosp*., 2005 OK 36, ¶ 16, 126 P.3d 602, 606 ("The question of whether or not a servant should be considered to have been acting within the line of duty sufficient to support *respondeat superior* liability is normally a question of fact to be determined by the jury from all the surrounding circumstances"). But either way, as we shall see next, whether in or out of the scope of employment, Basic, Swain, and Camp may be held liable under Oklahoma law.

First, we know an *employer* may not be held liable for an employee's intentional acts outside the scope of employment. *Schovanec*, cited above is one of those cases. The archdiocese was not responsible for the priest's reprehensible acts because they were not done within the scope of his employment. That part of the lawsuit thus proceeded against

the priest individually. This alone requires remand as the jury may well agree with Plaintiffs that the specified conduct was intentional such that it was not within the scope of these three individuals' employment or agency with State Farm or any other employer.

Also, by statutory directive in Oklahoma *every person* is responsible for their torts involving willful deceit:

> One who willfully deceives another, with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers.

Okla. Stat. tit. 76, § 2. An employee does not avoid liability because he acts as the agent:

> If the agent, acting within the scope of his authority, in the pursuit of a lawful purpose, steps aside to engage in a tortious act to the injury of property or personal rights of another, the agent becomes liable for the injury done.

*Bane v. Anderson, Bryant & Co.,* 1989 OK 140, ¶ 15, 786 P.2d 1230, 1234 (emphasis added). The above is an exception to the rule that says an agent is not liable for contracts made on behalf of a known principal. That exception "applies to actions for fraud, negligence, and conversion by the agent." *Id*., ¶ 16, 786 P.2d at 1234 (emphasis added). Such conduct subjects the employee to personal liability regardless of whether the employer is also liable vicariously; when the acts are also within the scope of the employment though, both employee and employer are liable for the tortious conduct:

> If the principal acquiesces, aids, or knowingly accepts the benefits of the acts of the agent in the wrongful undertaking, both the principal and agent become joint tort-feasors.

*Rogers*, 1923 OK 711, ¶ 3, 220 P. at 365. In *Bane,* the above rules prevented an employee, "Bryant"—the "President/Broker/Dealer" of the securities firm—from avoiding personal liability for his tortious conduct. But nothing in the tort statute or in the above cases limits

19

the rule of agent liability for willful torts to managerial employees. That is why both master and servant are often liable for punitive damages arising from the servant's conduct—and this rule is based upon *respondeat superior*; it does not require "ratification" by the master:

> We would have to overrule a myriad of cases to reach the result urged by the employer. Under Oklahoma law, an employer may be held vicariously liable for the punitive damages arising out of an employee's act if: 1) a master/servant relationship exists between the employer and employee; and 2) the act was committed while the employee was acting within the scope of employment. Punitive or exemplary damages may be assessed against an employer for an employee's act under the doctrine of *respondeat superior.* There is no requirement that an employer participate in or ratify the conduct of an employee to be liable for punitive or exemplary damages under the doctrine of *respondeat superior.*

*Blanks v. Aramark Refreshment Servs.,* 2008 OK 29, ¶ 19, 198 P.3d 877, 884 (finding both non-managerial employer and employer liable).

Moving closer to the claims in suit, *Blanks v. Allstate Ins. Co.,* No. CV 00-609 JP/DJS, 2000 U.S. Dist. LEXIS 24272 (D.N.M. Nov. 17, 2000) expressly rejects the claim that an insurance adjuster cannot be held liable for tortious acts related to his or her job as an adjuster. That case involved allegations that an employee adjuster engaged in claims handling practices designed to deny adequate coverage to the insured. *Id*. at *3. Per *Blanks,* where the adjuster's liability is premised on some individual fraudulent wrongdoing (as alleged here against both Swain and Camp) the agent is not excused because the specific activities were "in furtherance" of insurance company policies and directives. *Id.* at *7-9. Thus, *Blanks* allows such liability even for such acts in the scope of employment.

*Blanks* distinguishes a seemingly contrary New Mexico Supreme Court case because even that contrary case recognizes an exception to a rule of nonliability where the

employee's acts constitute intentional torts. *Id.* at *9-10 (distinguishing *Bourgeous v. Horizon Healthcare Corp.*, 872 P.2d 852 (1994)). In the end, *Blanks* expressly rejects a rule of personal nonliability where the employee adjuster "actively participated in fraud." 2000 U.S. Dist. LEXIS 24272 at *10. Under all the above authorities, Basic, Swain, and Camp's acts are actionable regardless of whether they were within the scope of employment and regardless of whether State Farm is also liable. *Nakamoto v. State Farm Fire & Cas. Co.*, CIVIL NO. 20-00243 SOM, 2020 U.S. Dist. LEXIS 143486 (D. Haw. Aug. 11, 2020), holds similarly: "[A]gents are liable when they cause a third party 'harm which is tortious' even if that conduct falls within the scope of their employment." *Id.* at *12 n. 2. We know from the cases cited above (*Bane, Rogers, Fox, Sisk*) and from 76 O.S. § 2, that the Oklahoma rule is like the Hawaii and New Mexico rules.

### iii. Trinity Baptist Does Not Change the Above Stated Rules

State Farm cites *Trinity Baptist Church v. Bhd. Mut. Ins. Servs.*, 2014 OK 106, 341 P.3d 75 for a rule that anyone who assists with an insurance claim is immune from personal liability in tort. *Trinity* is not the impenetrable shield claimed by State Farm. *Trinity* holds that an *independent* adjuster does not owe a duty of good faith and fair dealing and cannot be held liable for bad faith or simple negligence. *Id.* at ¶¶ 34, 87. First, *Trinity* very carefully attaches the term "independent" in nearly every of the many instances that it uses the word "adjuster." Thus, it is doubtful *Trinity* has any application to an employee adjuster. Certainly nothing in *Trinity* suggests that it would apply to a licensed professional engineer (like Swain) or to a third party (like Basic) who causes damage to an insured property that is not covered by the policy and for that reason cannot be recovered in a claim against the

insurer. Second, unlike the independent adjuster in *Trinity* who was not supposed to make coverage commitments to the insured or communicate in writing with the insured (*Id.* at ¶ 3, 78), David Camp, like most employee adjusters, *was responsible for communicating with the Plaintiffs and for making coverage decisions*. Thus, Trinity does not purport to apply to an employee adjuster—let alone to a decision-making employee adjuster. But as we will see next, there are more significant distinctions between *Trinity* and this case.

*Trinity* answers two precise questions: "1) whether a special relationship existed between an insured entity and an independent adjuster hired by the insurer, sufficient to subject the independent adjuster to the implied covenant of good faith and fair dealing arising under the insurance contract; and 2) whether an independent insurance adjuster owes a legal duty to the insured such that it may be liable to the insured for negligence in its adjustment of the claim." *Id.* at ¶ 1, 341 P.3d at 77. Thus, *Trinity* is not about Basic who was not a claims adjuster and whose tort damages may not be recoverable in an action against the insurer. It is also not about licensed professional engineers who owe independent duties to third party beneficiaries of their services. *See e.g.*, *Boren v. Thompson & Assocs.*, 2000 OK 3, ¶ 23, 999 P.2d 438, 447 (architectural firm liable in tort to any party foreseeably harmed by their negligence); accord *MBA Commer. Constr., Inc. v. Roy J. Hannaford Co.*, 1991 OK 87, 818 P.2d 469. Nor is *Trinity* about an employee adjuster or *any* intentional torts falling outside the scope of employment. Indeed, in 2017, the Oklahoma Supreme Court had this to say about *Trinity*: "*Trinity Baptist Church* addressed the question who owes the duty to deal fairly and act in good faith . . . ." *Hensley v. State Farm Fire & Cas. Co.*, 2017 OK 57, ¶ 19, 398 P.3d 11, 18. Here, in contrast to

22

*Trinity*, Plaintiffs' claims against Basic, Swain, and Camp are not for bad faith or even for negligence—the claims against these three are premised primarily upon their willful, intentional misconduct. Nor does *Trinity* negate *Bane v. Anderson, Rogers v. Brummet, Bierman v. Aramark, Blanks v. Allstate,* or *Nakamoto v. State Farm*—we all still owe that 76 O.S. § 2 duty to third parties for willful deceit and other intentional misconduct. To this point, even those courts that prohibit negligence claims against independent adjusters allow intentional tort claims. *E.g.*, *King v. Nat'l Sec. Fire & Cas. Co.*, 656 So. 2d 1338 (Fla. Dist. Ct. App. 1995) (cited by *Trinity*). *Trinity* simply does not apply here.

This all brings us back to the *Ada-Konawa* case. To use an extreme illustration, we might ask if *Trinity* would shield an adjuster from personal liability for shooting an insured while adjusting a claim (which, per *Ada-Konawa*, may well be within the scope of employment)—of course not. We should not then assume in the face of all the law cited herein that that is what the Oklahoma Supreme Court intended with *Trinity*.

Indeed, nothing in *Trinity* negates Oklahoma law pertaining to intentional, willful tort. To that point, since *Trinity*, in *Bynum v. State Farm Fire & Cas. Co.*, No. CIV-18-540-D, 2018 U.S. Dist. LEXIS 134622 (W.D. Okla. Aug. 8, 2018), Judge DeGiusti applied *Bane v. Anderson* to reject State Farm's claim that its adjuster was immune from an intentional tort claim (trespass for entering the insured's garage without permission)—as here, that claim was not premised on bad faith (or negligence), but upon willful misconduct. *Id*. at * 9. Also, as here, the plaintiff in *Bynum* alleged that the conduct was outside the scope of employment. <u>However, the holding of *Bynum* was not dependent on the adjuster being outside the scope of employment at the time</u>. *Id.* Though *Bynum* does not expressly

mention *Trinity*, *Bynum's* holding is, as shown throughout this brief, consistent with *Trinity* and Oklahoma law predating *Trinity*. Even more in point than *Bynum*, is *Jonnada v. Liberty Ins. Corp*., Case No. CIV-19-456-D, 2019 U.S. Dist. LEXIS 199645 (W.D. Okla. Nov. 18, 2019). There, Judge DeGiusti does cite and apply *Trinity* to reject the negligence claim against an engineering firm hired to investigate that insurance claim but does not apply *Trinity* to the fraud claim against the engineering firm (he rejects that claim only because the alleged fraud was not plead with specificity. *Id*. at *9-10. In other words, Judge DeGiusti recognized implicitly that *Trinity* does not bar such a fraud claim.

There is also another recent case that State Farm should recognize: *Johnson v. State Farm Fire & Cas*. Co., Case No. 19-CV-250-JED-FHM, 2019 U.S. Dist. LEXIS 182496 (N.D. Okla. Oct. 22, 2019). *Johnson* soundly rejects any claim that a policyholder cannot sue an insurance adjuster for intentional misconduct during the adjustment process. *Id*. at 9-10. There, like here, State Farm construed *Trinity* to mean that "when a dispute arises from the adjustment process, 'any wrongful conduct is attributable to the insurer as opposed to the adjuster.'" *Id*. at 9. The court recognizes the absurdity of such a contention: "It seems unlikely that the Oklahoma Supreme Court intended such a sweeping grant of immunity, as it would give adjusters free rein to engage in underhanded tactics during the adjustment process." *Id*. at 10. Johnson then recognizes that "Oklahoma courts might someday extend *Trinity Baptist* [to intentional tort, but also that t]hey have not done that yet . . . ." *Id*. Since overruling state precedent is not the task of the federal courts, this matter must be remanded.

All the above brings us back to the fraudulent joinder standard. In *Cross v. Clemons*,

Case No. CIV-21-00743-PRW, 2021 U.S. Dist. LEXIS 232822, *6 (Dec. 6, 2021), this Court remanded because the defendant could not show by clear and convincing evidence that the claim was so flawed that recovery was impossible. So too here. State Farm cannot show that there is no possibility that Plaintiffs can state viable claims against the nondiverse Defendants. As such remand is proper.

### III. Conclusion

Per the Court of Appeals, "[a] claim which can be dismissed only after an intricate analysis of state law is not so wholly insubstantial and frivolous that it may be disregarded for purposes of diversity jurisdiction." *Montano,* 2000 U.S. App. LEXIS 6852 at *5-6. Here, both the simple and the "intricate analysis" support Plaintiffs' claims against Defendants Wallenberg, Camp, Swain, and Basic. There is nothing "fraudulent" about Plaintiffs' joinder of these nondiverse parties and remand to the Cleveland County District Court is required.

Respectfully submitted,

/s/Ashley M. Thul
Adam M. Engel, OBA #32384
Ashley M. Thul, OBA #33947
204 North Robinson Avenue, 21st Floor
Oklahoma City, OK 73102-7201
T : (405) 232-4100
F : (405) 323-4140
Email : aengel@meclaw.net
      athul@meclaw.net
**ATTORNEYS FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

     I hereby certify that on the 3rd day of April 2024, the attached document was electronically transmitted to  the Clerk's Office using the CM/ECF Systems for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrant(s):

| | |
|---|---|
| Andrew J. Morris | andrew.morris@mcafeetaft.com |
| Peyton S. Howell | peyton.howell@mcafeetaft.com |
| Jessica Dickerson | jessica.dickerson@mcafeetaft.com |
| Gregory N. Ziegler | ziegler@zgblaw.com |
| Andrew L. Peterson | apetersen@zgblaw.com |

/s/ Ashley M. Thul