IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| DON FOSTER and BRENDA FOSTER, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. CIV-24-00222-PRW |
| | ) | |
| STATE FARM FIRE AND CASUALTY COMPANY, et al., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Before the Court are the Motion to Remand (Dkt. 20), filed by Plaintiffs Don and Brenda Foster; the responses filed by Defendants Corbin Swain (Dkt. 29) and State Farm Fire and Casualty Company (Dkt. 30); the Fosters' replies (Dkts. 31–32); and State Farm's Sur-Reply (Dkt. 38). For the reasons that follow, the Court **GRANTS** the Motion (Dkt. 20) and **REMANDS** the case to the District Court of Cleveland County, Oklahoma.

*Background*

This case arises out of a denial of coverage under a property insurance policy. Unless otherwise noted, the following facts are derived from the Fosters' Amended Petition. (Dkt. 24). The Fosters live in Cleveland County, Oklahoma, and their home was insured under State Farm Policy No. 36C077183 during the relevant period. They allege that on July 18, 2021, they sustained storm damage to their home, which was covered under the Policy. The Fosters submitted a claim, which State Farm partially denied on the grounds that much of the damage to the Fosters' home was caused by preexisting conditions,

1

including long-term age-related deterioration and mechanical damage to the roof. Consequently, on November 20, 2023, the Fosters brought a claim for breach of the duty of good faith and fair dealing against State Farm in the District Court of Cleveland County, Oklahoma. The Fosters also sued several non-diverse defendants. State Farm removed the case to this Court, arguing that the Fosters fraudulently joined the non-diverse defendants.

Defendant Rita Wallenberg Insurance Agency, Inc., is one of the non-diverse defendants. It initiated the issuance of the Policy.[1] According to the Fosters, the Wallenberg Agency made three misrepresentations to them. First, either "Ms. Wallenberg []or others in her employ [] claim[ed] that they conducted a thorough inspection of [the Fosters'] home and [] state[d] that the home, including the roof, [] was in good condition and that there were no concerns of preexisting damage, age-related or otherwise, to prevent fully covered repair or replacement of [their] home in the event of a loss."[2] Second, Ms. Wallenberg assured Mr. Foster that the home "would be fully repaired, or replaced to its pre-loss condition in the event of a storm or other damaging incident."[3] Third, "Ms. Wallenberg stated that her agency had a computerized means to perform precise calculations to ensure that the home was covered with sufficient policy limits[,]" and the policy limit and premium was calculated based on the home "being in good condition . . . with no

---

[1] The Wallenburg Agency has since been dissolved. Rita Wallenburg was the principal shareholder and owner of the Wallenberg Agency. The Wallenberg Agency is undisputedly domiciled in Oklahoma for purposes of diversity jurisdiction.

[2] Aff. of Pl. Don Foster (Dkt. 31-2), at 1; *see also* Am. Pet. (Dkt. 24), ¶ 152.

[3] Aff. of Pl. Don Foster (Dkt. 31-2), at 1; *see also* Am. Pet. (Dkt. 24), ¶ 151.

preexisting damage concerns to affect coverage."[4] The Fosters assert that each of these representations turned out to be false.

State Farm has provided an unsworn declaration of Ms. Wallenberg, in which she denies having made these representations and also denies having ever inspected the home. (Dkt. 30-2). The Fosters have provided Mr. Foster's affidavit, in which he maintains that either she or those in her employ did in fact make the representations. (Dkt. 31-2).

Regardless of who said what, the Fosters allege that relying on the representations, they purchased the Policy and timely paid their premiums. Had the Wallenberg Agency identified any preexisting damage, the Fosters assert that they would have taken corrective action. The Fosters also maintain that, had Ms. Wallenberg calculated their premiums based on the preexisting damage, their premiums would have been lower. Consequently, they seek damages against the Wallenberg Agency for constructive fraud and failure to procure insurance.

The Fosters now move to remand the case to Cleveland County, arguing that they did not fraudulently join the Wallenberg Agency. Because the Court finds that a viable claim for constructive fraud exists against the Wallenberg Agency, it need not detail the Fosters' other claims.

---

[4] Aff. of Pl. Don Foster (Dkt. 31-2), at 1; *see also* Am. Pet. (Dkt. 24), ¶ 153.

*Standard of Review*

"Federal courts are courts of limited jurisdiction[,]" which "possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree."[5] Among the powers that Congress has bestowed upon the courts is the power to hear controversies arising under federal law—federal-question jurisdiction—and controversies arising between citizens of different states—diversity jurisdiction.[6] The Fosters do not raise a federal question. Diversity jurisdiction requires a party to "show that complete diversity of citizenship exists between the parties and that the amount in controversy exceeds $75,000."[7] Under the doctrine of fraudulent joinder, however, courts are to ignore a non-diverse defendant's citizenship if the defendant invoking the court's jurisdiction carries the "heavy burden" of showing either "(1) actual fraud in the pleading of jurisdictional facts," or, as is more common, "(2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court."[8]

"Where, as here, removal is based on the second prong, the removing party must demonstrate the non-liability of the defendant[s] alleged to be fraudulently joined with

---

[5] *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (internal citations omitted).

[6] 28 U.S.C. §§ 1331–1332.

[7] *Radil v. Sanborn W. Camps, Inc.*, 384 F.3d 1220, 1225 (10th Cir. 2004) (citation omitted).

[8] *Dutcher v. Matheson*, 733 F.3d 980, 988 (10th Cir. 2013) (quoting *Cuevas v. BAC Home Loans Servicing, LP*, 648 F.3d 242, 249 (5th Cir. 2011)).

complete certainty."[9] Remand is required if any claim against a nondiverse defendant "is possibly viable."[10] The standard for showing fraudulent joinder is stringent because of (1) the presumption in favor of a plaintiff's right to select their forum and join tortfeasors,[11] (2) the presumption against the exercise of removal jurisdiction due to federalism concerns,[12] and (3) the risk of a post-merits reversal for lack of jurisdiction. Accordingly,

---

[9] *Ford v. Liberty Mut. Ins. Co.*, No. CIV-19-925-G, 2020 WL 259554, at *2 (W.D. Okla. Jan. 16, 2020) (cleaned up and citation omitted); *see also Smoot v. Chi., R.I. & P. R. Co.*, 378 F.2d 879, 882 (10th Cir. 1967).

[10] *Montano v. Allstate Indem.*, 211 F.3d 1278, at *2 (10th Cir. 2000). The Court cites unpublished decisions of the Tenth Circuit for their persuasive value, consistent with Tenth Cir. R. 32.1 and Fed. R. App. P. 32.1.

[11] *See Grancare, LLC v. Thrower by & through Mills*, 889 F.3d at 549–50 (9th Cir. 2018) ("The relative stringency of the standard accords with the presumption against removal jurisdiction, under which we strictly construe the removal statute, and reject federal jurisdiction if there is any doubt as to the right of removal in the first instance." (internal quotation marks and citation omitted)); *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997) (This strict approach to fraudulent joinder "makes sense given the law that absent fraudulent joinder, plaintiff has the right to select the forum, to elect whether to sue joint tortfeasors and to prosecute his own suit in his own way to a final determination." (internal citation and quotation marks omitted)).

[12] Removal jurisdiction must be "construe[d] . . . strictly because of the 'significant federalism concerns' implicated." *Dixon v. Coburg Dairy, Inc.*, 369 F.3d 811, 816 (4th Cir. 2004) (en banc) (internal citation and quotation marks omitted); *see also Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 109 (1941) ("Due regard for the rightful independence of state governments . . . requires that [federal courts] scrupulously confine their own jurisdiction to the precise limits which the statute has defined." (citations and internal quotation marks omitted)).

a challenged joinder may be considered non-fraudulent even when the predicate claim might not survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).[13]

When considering whether an exercise of diversity jurisdiction pursuant to the fraudulent joinder doctrine is appropriate, the federal court resolves "all factual and legal issues . . . in favor of the plaintiff."[14] Courts may "look beyond the pleadings" and consider the entire record to determine whether joinder is fraudulent.[15] That the Court may pierce the pleadings, however, "does not mean that the federal court will pre-try . . . doubtful issues of fact to determine removability; the issue must be capable of summary determination and be proven with complete certainty."[16]

*Analysis*

**I.    State Farm has not shown that the Fosters are unable to establish a constructive fraud claim against the Wallenberg Agency.**

State Farm has not met its "heavy burden" of showing no possibility of recovery against the Wallenberg Agency on the Fosters' constructive fraud claim. Constructive fraud occurs "[i]n any breach of duty which, without an actually fraudulent intent, gains an

---

[13] *See Montano*, 211 F.3d at *2 ("This standard is more exacting than that for dismissing a claim under Fed. R. Civ. P. 12(b)(6); indeed, the latter entails the kind of merits determination that, absent fraudulent joinder, should be left to the state court where the action was commenced." (citation omitted)); *see also Grancare*, 889 F.3d at 549 ("A claim against a defendant may fail under Rule 12(b)(6), but that defendant has not necessarily been fraudulently joined.").

[14] *Dutcher*, 733 F.3d at 988 (quoting *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 461 (2d Cir. 1998)).

[15] *Brazell v. Waite*, 525 F. App'x 878, 881 (10th Cir. 2013) (internal quotation marks omitted) (citing *Smoot*, 378 F.2d at 881–82).

[16] *Smoot*, 378 F.2d at 882 (internal quotation marks and citation omitted).

6

advantage to the person in fault . . . by misleading another to his prejudice . . . ."[17]

"[L]iability for constructive fraud may be based on negligent or even innocent misrepresentation."[18] To prevail on a claim of constructive fraud, a plaintiff must prove:

> (1) That the defendant owed plaintiff a duty of full disclosure. This duty could be part of a general fiduciary duty owed by the defendant to the plaintiff. *This duty could also arise, even though it might not exist in the first instance, once a defendant voluntarily chooses to speak to plaintiff about a particular subject matter*;
>
> (2) That the defendant misstated a fact or failed to disclose a fact to plaintiff;
>
> (3) That the defendant's misstatement or omission was material;
>
> (4) That plaintiff relied on defendant's material misstatement or omission; and
>
> (5) That plaintiff suffered damages as a result of defendant's material misstatement or omission.[19]

A duty necessary for constructive fraud may arise where a party "selectively discloses facts that create a false impression."[20] "One may be under no duty to speak, but if he or she undertakes to do so, the truth must be told without suppression of material facts

---

[17] OKLA. STAT. Ann. tit. 15, § 59 (West); *see also Patel v. OMH Med. Ctr., Inc.*, 987 P.2d 1185, 1199 (Okla. 1999) ("It may be defined as any breach of a duty which, regardless of the actor's intent, gains an advantage for the actor by misleading another to his prejudice'").

[18] *Patel*, 987 P.2d 1185, 1199.

[19] *Specialty Beverages, L.L.C. v. Pabst Brewing Co.*, 537 F.3d 1165, 1180–81 (10th Cir. 2008) (emphasis supplied by *Specialty Beverages*) (applying Oklahoma law) (citation omitted).

[20] *Id.* at 1181 (citing *Uptegraft v. Dome Petrol. Corp.*, 764 P.2d 1350, 1353 (Okla. 1988)) (Thus, where one conveys "a false impression by disclos[ing] some facts and conceal[ing] others is guilty of fraud even though his statement is true as far as it goes, since concealment is in effect a false representation that what is disclosed is the whole truth." (citation and internal quotation marks omitted) (collecting cases)).

within his or her knowledge or materially qualifying those stated."[21] In the insurance context, while insurance agents are not under an affirmative duty to advise their clients of the nature and character of the insurance procured, if an agent does advise its client, it has a duty to speak truthfully.[22]

State Farm argues that the Fosters have not shown that the Wallenberg Agency owed them a duty. But the Fosters allege that Ms. Wallenberg made several misrepresentations to them. Assuming that she did in fact make the representations, this would give rise to a duty to speak truthfully. State Farm relies on Ms. Wallenberg's Declaration to assert that she never made the representations in the first place. The Fosters, however, have disputed Ms. Wallenberg's declaration with Mr. Foster's affidavit. The Fosters have therefore sufficiently alleged that these representations gave rise to a duty of full disclosure. They further allege that the representations were untrue and material and that they relied on the misrepresentations and suffered resulting damages. State Farm has not shown with complete certainty that the Fosters have no claim against it for constructive fraud, so remand is appropriate.

The facts of this case are distinguishable from those in *Steinkamp v. State Farm Fire and Casualty Company*,[23] on which State Farm relies. The plaintiff in *Steinkamp* claimed

---

[21] *Sutton v. David Stanley Chevrolet, Inc.*, 475 P.3d 847, 854 (Okla. 2020) (citation omitted) ("In other words, the facts concealed must be such as in fair dealing, the one party has a right to expect to be disclosed, and such as the other party is bound to disclose.").

[22] *See Steinkamp v. State Farm Fire & Cas. Co.*, No. CIV-22-00047-PRW, 2023 WL 11920886, at *3 (W.D. Okla. Sept. 29, 2023) (collecting cases).

[23] 2023 WL 11920886.

that the insurance agent represented to her that "nothing would preclude her from receiving replacement cost benefits in the event of a covered loss."[24] The plaintiff argued that this was a misrepresentation because the insurance agency later denied her hail damage claim, which she maintained was covered under the insurance policy. This Court held that because an insurer determines whether a covered loss occurred, and the insurance agency denied the plaintiff's claim because it determined that a covered loss did not occur, the agent's representation did not constitute a misrepresentation, as the agent did not "assure[] her that the hail damage at issue was a covered loss."[25] Conversely, here, the Fosters allege that Ms. Wallenberg represented to them that the entire home would be fully replaced in the event of a storm loss, that a storm loss occurred, and that State Farm refused to replace the entire roof. Other district courts in Oklahoma have remanded in similar contexts. [26]

---

[24] *Id.* at *3.

[25] *Id.*

[26] *See, e.g.*, *Ford*, 2020 WL 259554, at *1 (Where the plaintiffs alleged that the insurance agent represented to them that the policy "would fully replace their home in the event of a loss, knowing such statement was untrue" and the insurance agent did not inform the plaintiffs that the policy had an exclusion for water damage, the court concluded that it could not determine with "complete certainty" that the agent had no duty to notify the plaintiffs of the exclusion.); *Johnson v. Shelter Mutual Insurance Company*, No. 23-CV-351-RAW-GLJ, 2024 WL 1009548, at *5 (E.D. Okla. Feb. 16, 2024) *rec. adopted* No. CIV-23-351-RAW-GLJ, 2024 WL 1178487 (E.D. Okla. Mar. 19, 2024) (Where the plaintiff "asked for and [the insurer] agreed to provide her with replacement coverage and represented the policy procured provided such coverage" the magistrate judge determined that he could not conclude with complete certainty that the insurer had no duty to notify the plaintiff "that the policy procured would in fact not actually fully replace her home in the event of a loss."); *see also Gentry v. Am. Motorist Ins. Co.*, 867 P.2d 468, 472 (Okla. 1994) (holding that a "duty to inform [the plaintiff] of exclusions at the time of the negotiations" arose where (1) the plaintiff asked the insurance agent for an "all-risk" insurance policy, which specifically included "theft" and (2) the agent did not inform the plaintiff that the policy excluded embezzlement).

9

Moreover, State Farm failed to show with complete certainty that the Fosters cannot recover for Ms. Wallenberg's alleged statements regarding the condition of their home. In *South Sooner Holdings v. Travelers Indemnity Company of America*, the plaintiffs alleged that the soliciting insurer represented to the plaintiffs that there were no preexisting issues with its property that would impact future coverage under the policy, that plaintiffs relied on this representation, and that their claim was later denied on the basis of prior damage.[27] This Court granted the plaintiffs' motion to remand, finding that the defendant had not shown with complete certainty that there was no possibility of recovery against the soliciting insurer. This Court noted that "though it may have been highly unusual, imprudent, or even improper for [the soliciting insurer] to make representations about [the plaintiffs'] property, that fact does not establish with complete certainty that these representations did not occur."[28]

Similarly, here, State Farm notes in its Sur-reply that Mr. Foster does not affirmatively state that the Wallenberg Agency inspected the property. Thus, it argues that it would be "imprudent" to rely on Mr. Foster's affidavit. But regardless of whether the Wallenberg Agency actually inspected the property, the Court will not pre-try the question of what representations the Wallenberg Agency did or did not make to the Fosters. Instead, the Court must resolve the factual dispute in the Fosters' favor and assume that the Wallenberg Agency did in fact make the alleged representations to the Fosters. State Farm

---

[27] No. CIV-21-179-PRW, 2022 WL 17831395, at *1 (E.D. Okla. Dec. 21, 2022).

[28] *Id.* at *3 n.16.

has not shown with complete certainty that these representations did not occur. Therefore, it has not carried its "heavy burden" of showing that there is no "possibly viable" claim against the Wallenberg Agency.

## II. State Farm has not shown with complete certainty that the Fosters' constructive fraud claim is time-barred.

State Farm contends that the Fosters' claims against the Wallenberg Agency must fail as a matter of law because they are untimely. In Oklahoma, the statute of limitations for a fraud claim is two years.[29] State Farm argues that the Court should look to the date that Ms. Wallenberg made the alleged representations, rather than the date that the Fosters discovered that her representations were false. But in fraud claims, "the cause of action . . . shall not be deemed to have accrued until the discovery of the fraud[.]"[30] "Fraud is deemed to have been discovered when, in the exercise of reasonable diligence, it could have or should have been discovered."[31] The Fosters brought their original petition on November 20, 2023. Thus, State Farm must show with "complete certainty" that the Fosters should have discovered the alleged fraud on or before November 20, 2021.

State Farm argues that the Fosters should have been on notice of how their insurance policy functioned on September 15, 2021, when State Farm issued them an estimate for repairs. As the Fosters point out, however, the estimate provides no information about any preexisting damage to the roof. Rather, it provides that "[n]o wind or hail damage [was]

---

[29] OKLA. STAT. tit. 12, § 95(3).

[30] *Id.*

[31] *McCain v. Combined Commc'ns Corp. of Okla.*, 975 P.2d 865, 867 (Okla. 1998).

11

found to shingles."[32] The Fosters assert that they were not aware of basis for the claim decision until July 29, 2022, when Defendant Corbin Swain issued a report following his June 30, 2022, inspection, attributing the damage to the roof to noncovered footfall and wear and tear. State Farm has not controverted this fact allegation.

It therefore has not shown with "complete certainty" that the Fosters' claim is time-barred. Thus, the Fosters' constructive fraud claim against the Wallenberg Agency is viable, so remand is required because the Court lacks subject-matter jurisdiction.

### *Conclusion*

Accordingly, the Court **GRANTS** the Motion (Dkt. 20), **REMANDS** the case to the District Court of Cleveland County, Oklahoma, and **DENIES** all other pending motions (Dkts. 6, 7, 23) as moot.

**IT IS SO ORDERED** this 4th day of February 2025.

PATRICK R. WYRICK
UNITED STATES DISTRICT JUDGE

---

[32] State Farm Estimate (Dkt. 1-15), at 5.